**Frederick PATTERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 13–04–482–CR to 13–04–484–CR.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Oct. 26, 2006.

**854**

Jeff Blackburn, Attorney At Law, Lubbock, Joseph Rutherford Willie, Attorney At Law, Houston, for Appellant.

Robert E. Bell, Attorney At Law, Edna, Jim Vollers, Attorney At Law, Austin, for Appellee.

## OPINION ON REHEARING

Opinion on rehearing by Justice GARZA.

On the motion of appellant, Frederick W. Patterson, the en banc Court has reconsidered the merits of the instant appeal and now orders that the panel's opinion in this matter be withdrawn and that the following opinion by the en banc Court be issued in its place.[1]

This appeal follows three convictions stemming from three controlled purchases of crack cocaine by Santos Castro Castaneda, a paid informant working for the Edna Police Department and the Jackson County Sheriff's Department. Castaneda made the purchases of crack cocaine through Acie Jones, Jesse Darnell Chase, and Lisa Robinson. The crack cocaine sold to Castaneda was allegedly supplied to Jones, Chase, and Robinson by appellant.

Appellant was indicted and convicted on three counts of delivery of a controlled substance and was sentenced to ten years' imprisonment for each offense, with the sentences to run concurrently. TEX. HEALTH & SAFETY CODE ANN. § 481.002(8), (9) (Vernon Supp.2006). Appellant was also assessed court costs in the amount of $140 and a fine of $2,000 for each offense. Appellant now challenges his conviction by two issues: (1) there is insufficient evidence to corroborate testimony given at trial by Castaneda, a paid informant, or testimony given by Jones, Chase, and Robinson, who are accomplice witnesses as a matter of law; and (2) counsel provided appellant with ineffective assistance at trial. For the reasons that follow, we affirm the judgment of the trial court.

### Background

The three controlled transactions leading to appellant's arrest and convictions occurred over the course of two months. At trial, two officers from the Jackson County Sheriff's Department testified about how the transactions unfolded. Prior to each transaction, the officers met with Castaneda and searched her person, belongings, and vehicle for illegal drugs. None were found. An electronic audio transmitting and recording device (i.e., a wire) was then placed in her purse, and she was given money to purchase illegal drugs. The two officers then followed Castaneda at a generous distance, remaining in the same general area but often allowing her to move beyond their sight.

---

1. See Patterson v. State, Nos. 13–04–482–CR, 13–04–483–CR, 13–04–484–CR, 2005 Tex. App. LEXIS 8253 (Corpus Christi Oct. 6, 2005).

Castaneda approached numerous drug users and dealers and asked where she could purchase crack cocaine. Three of the individuals she approached (Jones, Chase, and Robinson) indicated that she could purchase crack cocaine from appellant. Each individual accompanied her to an area near appellant's house, where he or she took Castaneda's money and then went into appellant's house. Castaneda was left waiting in her car during all three transactions. Each individual subsequently returned to the car with crack cocaine, which they each indicated had come from appellant. After each transaction, Castaneda rendezvoused with the officers and delivered into their possession the crack cocaine she had purchased.

Throughout the investigation, the officers monitored the audio transmissions generated by the wire carried by Castaneda and were thereby able to listen to conversations she had with the various people with whom she came into contact. The conversations were primarily with Jones, Chase, and Robinson, though Castaneda did have two conversations with appellant, which are detailed below. The officers recorded the transmissions generated by the wire, and the recordings were played for the jury at trial. A transcript of the recordings was also admitted into evidence, along with the crack cocaine recovered by the officers after each transaction.

There was also trial testimony from Castaneda, Jones, Chase, and Robinson. Castaneda testified that she saw appellant at or near his house before or after each of the transactions, though she never saw the transactions, never saw appellant in possession of any crack cocaine, and never saw any exchange of money between appellant and Jones, Chase, or Robinson. Castaneda had a conversation with appellant before the first transaction, which was captured by the wire and is documented below. During that conversation, appel-lant did not directly respond to Castaneda's request for crack cocaine, though he did react to it. In a second conversation that occurred before the third transaction, Castaneda commented that appellant had been drinking too much alcohol. Based on the recording, appellant apparently did not respond to Castaneda's comment.

At trial, Jones, Chase, and Robinson testified that they purchased the crack cocaine from appellant and then gave it to Castaneda. For their part, the two officers involved in the operation testified that they never actually saw appellant during the transactions and never actually saw Castaneda come into contact with Jones, Chase, or Robinson. They also did not see Jones, Chase, or Robinson come into contact with appellant. One of the officers testified that he recognized appellant's voice during the following exchange documented on a recording generated during the first transaction:

**Castaneda:** What's up, [appellant's name]?

**Appellant:** (Inaudible)

**Castaneda:** Can you fix me up a tight fifty?

**Appellant:** You see that white boy on the corner? On that bicycle. (Inaudible)

The exchange then ended abruptly, with appellant driving off in his car ostensibly to avoid the "white boy on the corner."

In addition to the foregoing exchange, the recordings also contained numerous comments by Jones, Chase, and Robinson indicating that they could obtain crack cocaine from appellant and that the crack cocaine they ultimately sold to Castaneda had come from appellant.

This constitutes the entire record of evidence incriminating appellant in the transactions.

## I. Corroboration of Testimony by Informant and Accomplices

Appellant's first issue is comprised of two sub-issues, one challenging the sufficiency of the evidence to corroborate the testimony of the informant (Castaneda) and the second challenging the sufficiency of the evidence to corroborate the testimony given by the three accomplice witnesses (Jones, Chase, and Robinson). At the outset, this Court must decide a preliminary question of law: may an informant corroborate the testimony of an accomplice and vice versa?

### A. Corroboration Statutes

The legislature has mandated that a defendant may not be convicted based on the testimony of an informant except as follows:

(a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

(b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

TEX.CODE CRIM. PROC. ANN. art. 38.141 (Vernon 2005).

A similar provision restricts the use of testimony by accomplice witnesses:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005).

Article 38.17 provides, "In all cases where, by law, two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction." See TEX.CODE CRIM. PROC. ANN. art. 38.17 (Vernon 2005).

### B. Issue Preservation

■ The State contends that this Court should not address the merits of appellant's first issue because it was not preserved by a timely objection at trial. For the reasons that follow, we conclude that no timely objection at trial is required to preserve for appellate review complaints regarding the sufficiency of corroboration evidence.

■ In general, to preserve a complaint for appellate review, a party must present a timely request, objection, or motion to the trial court stating the specific grounds for the desired ruling if the specific grounds are not apparent from the context. TEX.R.APP. P. 33.1; see Blue v. State, 41 S.W.3d 129, 131 (Tex.Crim.App.2000). A party's failure to timely and specifically object at trial usually amounts to a procedural default that prevents review of the error on appeal. See Blue, 41 S.W.3d at 131. This is a general rule to which there are exceptions, as shown below.

Before addressing the question of issue preservation, we note that appellant is not challenging the trial court's failure to submit an accomplice-witness jury instruction, which would be a jury-charge error and could be raised for the first time on appeal. See Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App.1985). Instead, appellant argues that there is insufficient evidence to

corroborate the testimony of the informant and accomplices.

Although the State maintains that appellant was required to preserve this issue at trial, no authority is cited for this proposition other than the general mandate of rule 33.1. *See* TEX.R.APP. P. 33.1. We are unaware of any case precedent requiring that an objection be made to preserve a challenge to the sufficiency of corroboration evidence on appeal. Likewise, we are unaware of any case precedent holding that the issue can be raised for the first time on appeal.

■ Criminal defendants may bring challenges to the legal and factual sufficiency of the evidence on appeal without raising the issue at trial. *See Moff v. State,* 131 S.W.3d 485, 488–89 (Tex.Crim. App.2004). But a challenge to the sufficiency of corroboration evidence is different than an ordinary legal or factual sufficiency challenge. *See Cathey v. State,* 992 S.W.2d 460, 462–63 (Tex.Crim.App.1999). The informant-witness rule and the accomplice-witness rule are statutorily imposed and are not derived from federal or state constitutional principles that define the legal and factual sufficiency standards. *Id.* Thus, we cannot conclude, as appellant urges, that no objection is required to preserve the sufficiency of corroboration evidence simply because no objection at trial is required to bring ordinary challenges to the legal and factual sufficiency of the evidence.

■ Instead, we must turn to the law on procedural defaults to determine whether the issue can be raised for the first time on appeal. The court of criminal appeals has explained that the criminal justice system in Texas contains three distinct kinds of rules: (1) absolute requirements and prohibitions, (2) rights of litigants which must be implemented by the system unless expressly waived, and (3) rights of litigants which are to be implemented upon request and are otherwise forfeited. *Marin v. State,* 851 S.W.2d 275, 279 (Tex.Crim.App. 1993), *overruled in part by Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997); *see also Garcia v. State,* 149 S.W.3d 135, 144 (Tex.Crim.App.2004). Rights which are waivable only, as well as absolute systemic requirements and prohibitions, cannot be made subject to rules of procedural default because, by definition, they are not forfeitable. *Marin,* 851 S.W.2d at 279; *Garcia,* 149 S.W.3d at 144. Therefore, to determine whether the sufficiency of corroboration evidence can be raised for the first time on appeal, we must decide whether the issue is subject to rules of procedural default by determining which category of rules it implicates.

As noted above, the provisions regarding corroboration of testimony by informants and accomplice witnesses are found in the code of criminal procedure. *See* TEX.CODE CRIM. PROC. ANN. arts. 38.141, 38.14. The informant-witness provision states that a "defendant may not be convicted ... unless the [informant's] testimony is corroborated by other evidence tending to connect the defendant with the offense committed." TEX.CODE CRIM. PROC. ANN. art. 38.141. The accomplice-witness provision contains a similar rule: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed...." TEX.CODE CRIM. PROC. ANN. art. 38.14. If such requirements are not fulfilled, "the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction." *See* TEX. CODE CRIM. PROC. ANN. art. 38.17.

From the foregoing provisions, it appears that the sufficiency of corroboration evidence is an absolute requirement and therefore falls in the first category. We are mindful that it could also fall in the second category because the provisions im-

pose a duty on the trial court to render a judgment of acquittal *sua sponte* if the evidence is insufficient. *See id.; Mendez v. State*, 138 S.W.3d 334, 342 (Tex.Crim. App.2004). The provisions do not use language such as "on motion of the defendant" or "on the defendant's request." There is no indication in the code of criminal procedure that sufficient corroboration evidence is required only if demanded by the defendant, and we are unaware of any case law requiring the defendant to speak up to enforce the corroboration requirements. We therefore disagree with the State's contention that the sufficiency of corroboration evidence cannot be raised for the first time on appeal.

Because appellant did not expressly waive the sufficiency of corroboration evidence at trial, this Court does not need to decide whether the issue falls in the first or second category. For the purposes of this appeal, we need only hold that the issue does not fall in the third category and is therefore not subject to procedural default. *See* TEX.R.APP. P. 47.1.

## C. Accomplices as a Matter of Law

■ Before addressing the essential question raised by appellant's first issue, we must resolve an additional point, which, according to the State, would defeat appellant's first issue regardless of whether there was sufficient corroboration evidence. The State contends that Jones, Chase, and Robinson were not accomplices as a matter of law because, at the time of their testimony against appellant, they had already been indicted, tried, and convicted for delivery of a controlled substance. We disagree.

■ An accomplice is a person who participates with a defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Kutzner v. State*, 994 S.W.2d 180, 187 (Tex.Crim.App.1999) (citing *McFar-*

*land v. State*, 928 S.W.2d 482, 514 (Tex. Crim.App.1996)). The person's participation must involve an affirmative act that promoted the commission of the offense with which the accused is charged. *Id.* A person is an accomplice as a matter of law if he or she would be susceptible to prosecution for the offense with which the accused is charged or a lesser included offense. *Id.; Blake v. State*, 971 S.W.2d 451, 455 (Tex.Crim.App.1998). A co-indictee is an accomplice as a matter of law. *Hendricks v. State*, 508 S.W.2d 633, 634 (Tex. Crim.App.1974).

■ Although the court of criminal appeals has used the expression "susceptible to prosecution" to describe an accomplice, the court has clarified that what it means by that expression is that "a person is an accomplice if there is sufficient evidence connecting them to the criminal offense as a blameworthy participant." *Blake*, 971 S.W.2d at 454–55. According to the court, "Whether the person is actually charged and prosecuted for their participation is irrelevant to the determination of accomplice status—what matters is the evidence in the record." *Id.* at 455. Accordingly, we conclude that there is no merit to the State's contention that a person ceases to be an accomplice upon conviction for the offense in which he or she was an accomplice. Given the ample evidence adduced at trial to show that Jones, Chase, and Robinson committed delivery of a controlled substance, the same offense with which appellant was charged, we conclude that they were accomplices as a matter of law and proceed to address appellant's first issue on the merits.

## D. "Other Evidence" under Corroboration Provisions

■ We now address what constitutes "other evidence" under the corroboration provisions, or more specifically, what can-

not constitute "other evidence" under the corroboration provisions. *See* TEX.CODE CRIM. PROC. ANN. arts. 38.141, 38.14. Appellant contends that the corroboration provisions should be applied together and that "other evidence" should therefore exclude evidence that needs corroboration under either provision. The State disagrees. It contends that the provisions should be applied independently. According to the State, accomplice testimony is "other evidence" under the informant-testimony provision, and informant testimony is "other evidence" under the accomplice-witness provision.

In deference to the legislature, which has already legislated in this area, and in deference to the court of criminal appeals, which will have the final say in how the provisions should be applied, this Court concludes that appellant's interpretation of "other evidence" is the interpretation that comports closest to existing legal precedent. Only appellant's position recognizes the inherent suspicion and disfavor owed as a matter of law to testimony from witnesses such as accomplices and informants, who are of dubious credibility, especially where such testimony is offered as the sole proof of guilt against the defendant. *See Blake*, 971 S.W.2d at 454.

Under the State's interpretation, an accomplice would be able to corroborate the testimony of an informant at trial. The same informant could then testify at the same trial to corroborate the same accomplice. In this circular fashion, a defendant could be convicted on nothing more than the testimony of an accomplice and an informant. This result would be absurd in light of the legislature's clear action to disfavor such evidence and to hold it insufficient for conviction as a matter of law.

Accordingly, in reviewing the record to determine whether there is "other evidence tending to connect the defendant with the offense committed," we exclude from consideration all testimony that needs to be corroborated under articles 38.141 and 38.14.

## E. Review of "Independent" Evidence that "Tends to Connect"

The tends-to-connect standard presents a low hurdle for the State. *See Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex.Crim.App.1996); *Munoz v. State*, 853 S.W.2d 558, 559 (Tex.Crim.App.1993). After all, the tends-to-connect evidence is unlikely to be the same evidence that proves guilt beyond a reasonable doubt. If the "other evidence" required by the corroboration statute were always sufficient for conviction, there would be no necessity for the State to ever rely on accomplice or informant testimony in the first place. No precise rule has been formulated as to the amount of evidence required to corroborate the testimony of such witnesses, but the Texas Court of Criminal Appeals has articulated some basic precepts for our assistance. *Dowthitt*, 931 S.W.2d at 249; *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App.1994). The evidence used for corroboration does not need to be in itself sufficient to establish guilt beyond a reasonable doubt. *Gill*, 873 S.W.2d at 48; *Munoz*, 853 S.W.2d at 559; *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim.App.1992). Nor must it directly link the accused to the commission of the offense. *Dowthitt*, 931 S.W.2d at 249; *Gill*, 873 S.W.2d at 48; *Munoz*, 853 S.W.2d at 559; *Cox*, 830 S.W.2d at 611. While the accused's mere presence in the company of the accomplice or informant before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense. *See Dowthitt*, 931 S.W.2d at 249; *Gill*, 873 S.W.2d at 49; *Cox*, 830 S.W.2d at 611. Even apparently

insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration. *See Dowthitt*, 931 S.W.2d at 249; *Munoz*, 853 S.W.2d at 559. The absence of "smoking gun" evidence does not invalidate evidence that does connect the defendant to the offense. *Trevino v. State*, 991 S.W.2d 849, 852 (Tex.Crim. App.1999).

■ Having reviewed the "independent" evidence in this case, we conclude that the record presents the additional "suspicious circumstances" that, when coupled with the appellant's "mere presence," are sufficient for corroboration purposes. *See Dowthitt*, 931 S.W.2d at 249; *Gill*, 873 S.W.2d at 49; *Cox*, 830 S.W.2d at 611. We are mindful that these circumstances are not necessarily proof of guilt beyond a reasonable doubt, and do not list them as such. They are simply "suspicious circumstances" that were established by the evidence at trial:

(1) Law enforcement agents successfully recovered crack cocaine on three separate occasions in which they instructed the same confidential informant to purchase crack cocaine while secretly carrying a wire.

(2) Audio recordings generated by the informant's wire captured most of her conversations with the three accomplices who testified at trial.

(3) The audio recordings demonstrate that, on all three occasions, the informant asked one of the three accomplices to help her purchase crack cocaine.

(4) Each accomplice made statements on the audio recordings indicating that appellant could provide the crack cocaine on each date in question.

(5) The recordings indicate that the accomplices each took the informant to locate appellant and that each attempt to purchase crack cocaine ended at appellant's home, where the recordings demonstrate that the informant and accomplices succeeded in purchasing crack cocaine from appellant.

(6) Throughout the recordings, the accomplices and the informant refer to appellant as the source of the crack cocaine purchased by the informant on all three occasions.

(7) Appellant's voice is confirmed on recordings generated prior to two of the drug buys.

(8) On the first occasion in which appellant's voice is confirmed, the records demonstrate that the informant openly asked appellant for drugs and that appellant responded with a suspicious statement to the effect that he was concerned about a "white boy on the corner."

(9) In the foregoing exchange, appellant did not deny having drugs or deny that he sells drugs.

(10) Appellant's voice was also confirmed on the date of the third transaction, but this recording of appellant's voice merely confirms his presence at a bar before the transaction at his home.

(11) The law enforcement agents who monitored the informant's activities on all three occasions testified that they secured crack cocaine from the informant's possession immediately after the transactions that, according to the recordings, were completed at appellant's home.

(12) The law enforcement agents testified that, although they did not remain in visual contact with the informant and accomplices during the transactions, they could inde-

pendently verify that the transactions occurred at or near appellant's home.

Although there is nothing we would call a "smoking gun" in the factors listed above, the court of criminal appeals has stated that sufficient tends-to-connect evidence may sometimes be comprised of seemingly "insignificant circumstances." *See Dowthitt,* 931 S.W.2d at 249; *Munoz,* 853 S.W.2d at 559. The suspicious circumstances in this case are far from insignificant. Because the independent evidence "tends to connect" appellant to the offenses at issue, his challenge to the sufficiency of the evidence is overruled.

## II. Ineffective Assistance of Counsel

 In his second issue, appellant contends that his trial counsel was ineffective for failing to request a jury instruction on informant and accomplice witness corroboration. The standard for testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, an appellant must prove by a preponderance of the evidence that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) counsel's deficient representation prejudiced appellant's defense. *Id.* at 688, 104 S.Ct. 2052; *Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim. App.2002); *Rosales v. State,* 4 S.W.3d 228, 231 (Tex.Crim.App.1999). To carry this burden, an appellant must show that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000). In other words, the appellant must prove counsel's representation so undermined the proper functioning of the adversarial process that the trial

cannot be relied on as having produced a just result. *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. If, however, "there is at least the possibility that the conduct could have been legitimate trial strategy," then we must "defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Murphy v. State,* 112 S.W.3d 592, 601 (Tex.Crim.App.2003).

 Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct fell within the wide range of reasonable representation. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Tong,* 25 S.W.3d at 712. An appellate court should not use hindsight to second-guess the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State,* 588 S.W.2d 588, 592 (Tex.Crim.App.1979); *Harner v. State,* 997 S.W.2d 695, 704 (Tex. App.-Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999).

Although counsel's failure to object to the jury charge in this case was a "glaring error," *see Robinson v. State,* 665 S.W.2d 826, 831 (Tex.App.-Austin 1984, pet. ref'd) (stating that counsel's failure to request a charge pursuant to article 38.14 when it was clear that witness was accomplice witness as a matter of law was a glaring error, but finding that representation was not ineffective because there was ample corroboration by other evidence), we cannot conclude that counsel's deficient representation prejudiced appellant's defense. As discussed above, the State produced ample corroboration evidence. We therefore cannot conclude that, but for the counsel's deficiency, the result of the trial

would have been different. *See Tong,* 25 S.W.3d at 712. Accordingly, appellant's second issue is overruled.

The judgment of the trial court is affirmed.

Concurring Opinion by Justice ERRLINDA CASTILLO.

Dissenting Opinion by Justice LINDA REYNA YAÑEZ.

Concurring Opinion on Rehearing by Justice CASTILLO.

My understanding of the State's alternate counter-argument is that the statutes are unambiguous and mutually exclusive. *See* TEX.CODE CRIM. PROC. ANN. arts. 38.14, 38.141 (Vernon 2005). I agree with the result reached under the standards espoused with respect to our sufficiency review based on confidential informant and accomplice witness testimony for the following reasons.

We are authorized by *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim.App.1991) to affirm the judgment based on any legal theory supported by the evidence. Thus, we can affirm under either the confidential informant, or accomplice witness rule, and so I find the State's argument meritorious.

To overturn a jury conviction because the State has adduced evidence from both a confidential informant and an accomplice is not an intent the Legislature could have intended and leads to an absurd result.[1]

Finally, in light of the evidence in this case viewed through the prism of either the confidential informant or accomplice witness rules, it would be counterintuitive to overturn the conviction in this case.

Accordingly, I disagree with the majority's analysis, but join it in the judgment.

Dissenting Opinion on Rehearing by Justice YAÑEZ.

In his second issue, appellant contends his trial counsel was ineffective for failing to request either an accomplice witness or confidential informant instruction in the jury charge. Appellant's counsel did not object to the charge, which contained neither instruction. Although the majority concludes that counsel's failure to object to the charge was a "glaring error," it holds appellant cannot show he was prejudiced by the error because there was ample corroboration by other evidence. I would hold that the accomplice witness and confidential informant testimony was essential to the State's case, and in light of the remaining evidence, there is a reasonable probability that if the jury had been informed it could not convict appellant without corroboration of the accomplice witness and confidential informant testimony, the result of the proceeding would have been different. Accordingly, I would hold that counsel's failure to request an instruction on the law of accomplice witness testimony and confidential informant testimony deprived appellant of effective assistance of counsel. I respectfully dissent.

---

1. When interpreting a statute, we work to effectuate the collective intent of the legislature by discerning the objecting meaning of the statute's literal text at the time of its enactment. *Muniz v. State,* 851 S.W.2d 238, 244 (Tex.Crim.App.1993). *See also* TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005). We interpret a statute in accordance with the plain meaning of *its* language unless that language is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended. *Ex parte Graves,* 70 S.W.3d 103, 114 (Tex.Crim.App.2002) (citing *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991); *Whitelaw v. State,* 29 S.W.3d 129, 131 (Tex.Crim.App.2000)). If a statute may reasonably be interpreted in two different ways, and one reasonable interpretation of a statute yields absurd results and another interpretation yields no such absurdities, the latter interpretation should be preferred. *Muniz,* 851 S.W.2d at 244.

## Standard of Review and Applicable Law

To establish ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that he was prejudiced by his counsel's deficient performance.[1] Counsel's performance is deficient when his representation falls below the objective standard of professional norms.[2] However, our "review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance."[3]

To show prejudice, "appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[4] "In other words, the appellant must prove counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[5]

When ineffective assistance is raised on direct appeal, appellate counsel and the court must proceed on a trial record not developed for the object of litigating or preserving the claim, and thus it is often incomplete or inadequate for this purpose.[6] However, some claims may be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the record."[7]

If a prosecution witness is an accomplice as a matter of law (or a confidential informant), the trial court is under a duty to instruct the jury accordingly and failure to do so is error.[8] Accordingly, the failure of counsel to request an accomplice witness instruction or a confidential informant instruction when facts warrant such instructions constitutes deficient performance.[9]

If an appellant fails to object to the omission of an accomplice witness or confidential informant instruction, as in the present case, he or she must prove egregious harm to prevail on appeal.[10] Egregious harm results from errors that deny the defendant a "fair and impartial trial," "go to the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect his defensive theory."[11]

1. *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim.App.2004) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

2. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim.App.2002).

3. *Id.*

4. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim.App.2002).

5. *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.-Texarkana 2005, pet. ref'd) (citing *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052).

6. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim.App.2003).

7. *Id.* at 507 (citing *Massaro v. United States*, 538 U.S. 500, 508, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003)).

8. *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim.App.2002). In applying the confidential informant statute, see TEX.CODE CRIM. PROC. ANN. art. 38.141 (Vernon 2005), courts have adopted the standards for corroboration of accomplice-witness testimony. *See Jeffery v. State*, 169 S.W.3d 439, 447 (Tex.App.-Texarkana 2005, pet. ref'd).

9. *Henson v. State*, 915 S.W.2d 186, 197 (Tex. App.-Corpus Christi 1996, no pet.) (citing *Ex parte Zepeda*, 819 S.W.2d 874, 877 (Tex.Crim. App.1991)).

10. *Hall*, 161 S.W.3d at 149 (citing *Solis v. State*, 792 S.W.2d 95, 97–98 (Tex.Crim.App. 1990)).

11. *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 172 (Tex.Crim.App.1984) (op. on reh'g)).

"Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis."[12] In reviewing the trial court's failure to instruct the jury on the accomplice witness rule, we examine the record for evidence corroborating the accomplice witness testimony.[13] If the evidence "clearly warrants conviction independent of the accomplice testimony, the court's failure to instruct on the law of accomplice testimony is not reversible error."[14]

The court of criminal appeals has stated that an accomplice witness instruction is given to inform the jury that it cannot use the accomplice witness testimony unless there is also some non-accomplice evidence connecting the defendant to the offense.[15] Non-accomplice evidence can render harmless a failure to submit an accomplice witness instruction by fulfilling the purpose an accomplice witness instruction is designed to serve.[16] A harmless error analysis for the omission of an accomplice witness instruction should be flexible, taking into account the existence and strength of any non-accomplice testimony and the applicable standard of harm.[17] Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive."[18]

To determine the sufficiency of the corroboration, regardless of whether an objection was made, we eliminate the testimony of the accomplice witness and examine the testimony of the other witnesses.[19] In determining the strength of the particular item of non-accomplice evidence, we must examine (1) its reliability or believability, and (2) the strength of its tendency to connect the defendant to the crime.[20]

### Analysis

I agree with the majority that in determining whether there is "other evidence" tending to connect an accused with the offense under article 38.14,[21] the "other evidence" used to corroborate accomplice witness testimony cannot include uncorroborated confidential informant testimony. Uncorroborated confidential informant testimony is not "evidence" (unless independently corroborated), and thus, cannot constitute "other evidence" under the accomplice witness statute. Similarly, uncorroborated accomplice witness testimony is not "evidence" (unless independently corroborated), and thus, cannot constitute "other evidence" under the confidential informant statute.[22]

However, I disagree with the majority's conclusion that the independent evidence (non-accomplice, non-confidential informant testimony) "tends to connect" appellant to the offense.

---

12. *Id.* (citing *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996); *Batiste v. State,* 73 S.W.3d 402, 407 (Tex.App.-Dallas 2002, no pet.)).

13. *Id.*

14. *Id.* (quoting *Hall v. State,* 937 S.W.2d 580, 586 (Tex.App.-Texarkana 1996, pet. ref'd)).

15. *Id.* (citing *Herron,* 86 S.W.3d at 632).

16. *Id.*

17. *Id.* at 149–50.

18. *Id.* at 150 (quoting *Saunders v. State,* 817 S.W.2d 688, 692 (Tex.Crim.App.1991)).

19. *Id.*

20. *Id.*

21. *See* Tex.Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).

22. *See id.* art. 38.141(a).

To determine the sufficiency of the corroboration, I first eliminate the testimony of the accomplice witnesses (Acie Jones, Jesse D. Chase, and Lisa Robinson) to determine "whether the other inculpatory facts and circumstances in evidence tend to connect appellant to the offense." [23]

Here, the independent evidence consists of (1) the testimony of Officer Curt Gabrysch of the Jackson County Sheriff's Department, (2) the testimony of Officer Craig Repka of the Edna Police Department, and (3) audio recordings (and transcripts) of alleged drug transactions between the confidential informant, Santos Castro Castaneda ("Santos") and the accomplices, Jones (on June 13, 2002), Chase (on August 2, 2002), and Robinson (on August 2, 2002), respectively.

Officer Gabrysch testified that he and Officer Repka supplied Santos with money to purchase crack cocaine from known drug dealers. A "body wire" was placed in Santos's purse to record her conversations with drug dealers and enable the officers to listen to the conversations from a mobile unmarked car. Officer Gabrysch testified that prior to each of the transactions, Santos was searched to ensure that she did not possess drugs and that after each transaction, she returned with crack cocaine. Officer Gabrysch testified that (1) neither he nor Officer Repka saw appellant deliver drugs to anyone, (2) he did not see Santos at appellant's house, (3) he did not see any contact between Acie Jones and appellant, (4) he did not see any contact between Santos and appellant, and (5) he did not see appellant's house and did not know how many persons may have been inside. Officer Gabrysch testified that he, Officer Repka, and Santos assisted in preparing the transcript of the audiotapes. Significantly, Officer Gabrysch did not specifically testify that he was able to independently identify appellant's voice on the audiotape. With regard to appellant's voice on the tape, Officer Gabrysch testified as follows:

[Appellant's counsel]: All right. And one thing you did in here would you agree with me, Officer, that on this tape that's been introduced, on the tape do you ever hear the voice of Frederick Patterson, yes or no?

[Officer Gabrysch]; Yes.

[Counsel]: On June 13 you hear the voice of Frederick Patterson on the tape?

[Officer Gabrysch]: Yes.

[Counsel]: Okay. Do you recall what if anything he says?

[Officer Gabrysch]: I don't recall without looking at the transcript.

[Counsel]: Let's assume that's correct. Okay? And we'll assume it's correct that you heard his voice on there. When you heard his voice on there would you agree with me there's nothing that he said or you heard him say on that tape that would implicate him in any kind of narcotics transaction. Is that a fair statement?

[Officer Gabrysch]: No. It's not.

[Counsel]: Okay. So something he said would implicate him. Not the fact that you heard his voice but something that he said would implicate that he was involved in the narcotics transaction. That's your take?

[Officer Gabrysch]: In my opinion, yes.

. . . .

[Prosecutor]: You were asked a question if—isn't it true that nothing that was said on the tape by Rick Patterson would implicate him in any drug transaction. Do you recall that particular question?

[Officer Gabrysch]: Yes, I do.

---

**23.** *McDuff v. State,* 939 S.W.2d 607, 612 (Tex. Crim.App.1997).

[Prosecutor]: Is there not something that he says on that tape, he being Rick Patterson, that does implicate him in this drug transaction?

[Officer Gabrysch]: In my opinion, yes.

[Prosecutor]: Tell us what it is that he says on that tape that implicates him in this drug transaction?

[Officer Gabrysch]: Asked him to hook her [Santos] up with a tight fifty which is $50 worth of crack cocaine and in response said, do you see that white boy over there on the corner on that bike.

There are no other references in Officer Gabrysch's testimony regarding appellant's voice on the audiotape.

Officer Repka testified that as a confidential informant, Santos was paid a total of approximately $3,000 for her work as an informant, or approximately $100 per arrest. He also testified that he (1) did not see Santos's car parked near appellant's house, and (2) did not see appellant deliver drugs to anyone. Officer Repka's testimony does not include any identification of appellant's voice on the audiotape.

Except for Santos (the confidential informant), the three accomplice witnesses, and the two officers, the only other witness was appellant. Appellant testified he had never been involved with the delivery of drugs. With regard to the "white boy on the corner" statement, appellant testified he did not know whether he made the statement.

Although Santos's testimony may not be considered as "other evidence" unless it is independently corroborated, she testified that with regard to each of the transactions, she waited outside of appellant's house while each accomplice witness went into the house and returned with cocaine. Santos testified that she did not see appellant give drugs to any of the accomplices and did not see any of the accomplices give appellant money in return. Santos testified that she spoke to appellant twice. She testified that before the transaction involving Acie Jones, she spotted appellant in his vehicle, rolled the window down, and asked him "if he had a fifty." Santos testified that appellant responded, "did we spot the white man on the corner on the bike." Santos also testified that during the third transaction, when Robinson walked out of appellant's house with the drugs, appellant walked out a bit behind her. According to Santos, when she drove off, she said, "Bye, Rick." However, the transcript of the audiotape reflects that the "Bye, Rick" comment appears in the context of comments Santos made for the benefit of the officers: "Bye Lisa. O.K. I got it. Bye Rick, O.K. ya'll, I'm taking a left on taking a right on Roosevelt...."

Eliminating Santos's testimony, each of the accomplice witnesses testified that they went into appellant's house and purchased cocaine from him.

I conclude that the non-accomplice non-informant testimony tending to connect appellant to the offense is reliable, but very weak.[24] Excluding the accomplice and informant testimony, the evidence shows only that on three occasions, while being monitored by the officers at a distance, Santos drove to a location she identified as appellant's residence, and purchased cocaine from each of the three accomplices. Although appellant testified at trial and the jury therefore had an opportunity to determine whether his voice was on the audiotape, the single brief comment attributed to appellant on the audiotape was ambiguous. Although the audiotapes contain references to "Rick," there are no references to "Rick Patterson." The officers could not even verify that Santos was

24. See Herron, 86 S.W.3d at 632 (noting non-accomplice testimony must be evaluated for reliability and strength of tendency to connect appellant to the offense).

at or near appellant's house. I conclude that without the testimony of Santos and the accomplice witnesses, the officers' testimony and the audiotapes are insufficient to tend to connect appellant to the offense.[25]

Here, because the jury was given neither an accomplice witness instruction nor a confidential informant instruction, it was authorized to convict appellant with no corroborating evidence. The State's case relied overwhelmingly on the testimony of Santos and the accomplice witnesses. Accordingly, the jury instruction was critical to the outcome of the case.[26] The combination of the omission of the proper accomplice witness and confidential informant instructions and extremely weak corroborating evidence may result in a significantly less persuasive case for conviction.[27] Considering the weak nature of the non-accomplice non-confidential-informant testimony, I believe that rational jurors certainly could have found the State's case significantly less persuasive had they been properly instructed.[28] I conclude that in light of the facts of this case, failure to give the jury instruction on accomplice witness or confidential informant corroboration amounted to egregious harm.[29]

## Conclusion

Because the jury was authorized to convict appellant without any corroborating evidence, I would find that counsel's failure to object to the charge or to request accomplice witness and confidential informant instructions so undermined the trial process that the trial cannot be relied upon as having produced a just result.[30] Accordingly, I would find there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different.[31] I would therefore sustain appellant's second issue, reverse the trial court's judgment, and remand to the trial court for a new trial.[32]

25. *See Young v. State*, 95 S.W.3d 448, 451–52 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (holding corroborating evidence was insufficient where officers could not verify that confidential informant went to appellant's house for cocaine transaction and the only identification of appellant's voice on audiotape recording of the transaction was provided by the confidential informant); *cf. Dennis v. State*, 151 S.W.3d 745, 749 (Tex.App.-Amarillo 2004, pet. ref'd) (holding corroborating evidence sufficient, even though the investigator did not actually see the transaction because the informant was searched prior to the meeting and wore a recording device that was monitored by the investigator, the investigator identified appellant's voice on the recording, the informant was observed going to appellant's house, appellant was seen approaching the informant's car, and the informant gave the officer cocaine on his return from the transaction); *Jefferson v. State*, 99 S.W.3d 790, 792–93 (Tex.App.-Eastland 2003, pet. ref'd) (holding corroborating evidence sufficient, even though the informant went by herself to a house to make a purchase, because she had been searched before she left, the officer watched her go into the house, a recording was made of the transaction, the officer testified that appellant's voice was on the recording, and the informant gave the officer cocaine when she returned to his vehicle).

26. *See Hall*, 161 S.W.3d at 151.

27. *See Saunders*, 817 S.W.2d at 693.

28. *See id.; Hall*, 161 S.W.3d at 151; *Howard v. State*, 972 S.W.2d 121, 128 (Tex.App.-Austin 1998, no pet.).

29. *See Hall*, 161 S.W.3d at 151; *Almanza*, 686 S.W.2d at 171.

30. *See Hall*, 161 S.W.3d at 156.

31. *See id.*

32. *See id.*