NUMBER 13-06-179-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MARTIN MARTINEZ, JR., Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 105th District Court 

of Nueces County, Texas

 


MEMORANDUM OPINION


Before Chief Justice Valdez, Justices Benavides and Vela


Memorandum Opinion by Justice Vela



 A jury convicted appellant, Martin Martinez, Jr., of two counts of aggravated
robbery, and after finding him to be a repeat-felony offender, assessed punishment for
each offense at twenty years' confinement, plus a $1,500 fine. By four issues, he
complains: (1) of a defective indictment, (2) that the accomplice-witness testimony
was not corroborated, (3) that the evidence is legally and factually insufficient to
support the convictions, and, (4) that he received ineffective assistance of trial
counsel. We affirm.

I. Background



 Seventy-six-year-old Lois Daniel testified that on the morning of December 6,
2005, she was driving from the grocery store to her Corpus Christi home when she
saw a black car following her. It followed her to the street where she lived. She
parked in her driveway, and when she got out and opened the trunk, a man came up
behind her and took her purse which had her checks. During the robbery, she injured
her arm and knee. The robber then got into the passenger's side of the black car,
which sped away. Daniel testified that about 4:45 p.m. that day, her husband
received a phone call from "somebody from Fiesta [Mart] . . . [who] said they had a
check . . . signed by me supposedly, but it wasn't, for $150. . . ." Her testimony
showed that someone was trying to cash the check and that she did not write out the
check. 

 On the afternoon of the Daniel robbery, eighty-three-year-old Rosa Barnes was
crossing a street in Corpus Christi when a man came up behind her and took her purse
which contained her checkbook. During the robbery, she injured her left side,
shoulder, and knees. The robber got into the passenger's side of a black car, which
sped away.

 Mostafa Bighamian owned the Fiesta Mart in Corpus Christi. His testimony
showed that on December 6, 2005, two Hispanic males came into his store. One of
them, whom he identified from a photo spread as Ronnie Montez, asked him to cash
a personal check for $150. Before deciding whether to cash it, Bighamian called the
owner of the check and was told not to cash it because it was stolen. Bighamian told
the two men he could not cash the check (1) and handed it to them.

 David Reyes, who was a friend of Ronnie Montez, testified that in early
December 2005, Montez and appellant asked him to cash the $476.32 check. Reyes
deposited the check into his account at the H.E.B. credit union in Corpus Christi. 
Reyes did not give Montez the money that day. Reyes's testimony showed that
appellant wanted the money that day.

 Officer Ralph Lee received the $476.32 check from H.E.B. Forensic analysis
showed that one of appellant's fingerprints was on the check. At trial, Rosa Barnes
identified the check as one of the checks from her checkbook which was inside her
stolen purse. This check was issued to Ronnie Montez and showed Barnes to be the
person who signed it. However, her testimony showed that she neither wrote out the
check nor authorized anyone to write it for her. Officer Lee did not request an analysis
of the handwriting on the check. 

 During the guilt stage, the trial court admitted into evidence State's Exhibit 10,
appellant's videotaped statement which he gave to Officer Lee. In his statement,
appellant denied knowing anything about the purse snatchings. However, he admitted
to being with Montez during Montez's endeavors to cash the checks. Appellant said
that he and Montez were trying to cash a check "for drugs." They went to the Fiesta
Mart to cash a check, and when Montez told him it was a "no go," he asked Montez,
"Do you know of anybody else?" Montez told appellant that he knew someone with
an account. Appellant and Montez went to the H.E.B. on Kostoryz where a man
picked up Montez to cash the check which Montez had. Appellant stayed in Montez's
car, and when they returned, Montez had "this paper" stating that they cashed the
check but that there would not be any money available until the next day. Appellant
told Officer Lee several times that he did not know where Montez got the checks. II. Discussion


A. Defective Indictment

 By issue one, appellant asserts the indictment did not allege the crime of
aggravated robbery because each count of the indictment stated that the victim was
"a person 64 years of age or older, . . . ." The penal code provides that a person
commits aggravated robbery if he or she "commits robbery as defined in Section
29.02, and . . . causes bodily injury to another person or threatens or places another
person in fear of imminent bodily injury or death, and if the other person is: 65 years
of age or older . . . ." Tex. Penal Code Ann. § 29.03(a)(3)(A) (Vernon 2003)
(emphasis added). Appellant did not object to the indictment.

 Article 1.14(b) of the Texas Code of Criminal Procedure provides that:


 If the defendant does not object to a defect, error, or irregularity of form
or substance in an indictment or information before the date on which the
trial on the merits commences, he waives and forfeits the right to object
to the defect, error, or irregularity and he may not raise the objection on
appeal or in any other post conviction proceeding.


Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005). In Sanchez v. State, 120
S.W.3d 359, 367 (Tex. Crim. App. 2003), the court explained that "[a]ny error in the
charging instrument must be objected to in a timely (in this case, before trial) and
specific manner, and any unobjected-to error in the instrument is not 'fundamental.'" 
Id. (parentheses in original); see also Salahud-Din v. State, 206 S.W.3d 203, 212
(Tex. App.Corpus Christi 2006, pet. ref'd) ("Since omitting an element from an
indictment is a defect of substance in an indictment, it naturally follows that the
indictment is still an indictment despite the omission of that element."). Because
counsel did not object to the indictment before trial, this issue is not preserved. (2) See
Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005); Sanchez, 120 S.W.3d at 367;
Salahud-Din, 206 S.W.3d at 212. Issue one is therefore overruled. 

B. Corroboration of Accomplice-Witness Testimony 

 By issue two, appellant argues that the testimony of the accomplice witness,
Ronnie Montez, was not corroborated. Montez's testimony showed that he drove the
car to and from the robberies. He stated that appellant accosted the victims and took
their purses. He also testified that appellant was present during the attempts to cash
the stolen checks and that he gave appellant the money received from the cashed
checks. Montez's testimony indicated that part of the reason for his involvement in
the second robbery was so that he could get "high."

 An accomplice is a person who participates with a defendant before, during, or
after the commission of the crime and acts with the requisite culpable mental state. 
Cocke v. State, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006); Paredes v. State, 129
S.W.3d 530, 536 (Tex. Crim. App. 2004). Here, Montez was indicted for both
aggravated robberies as a co-defendant; therefore, he is an accomplice as a matter of
law. See Patterson v. State, 204 S.W.3d 852, 858 (Tex. App.Corpus Christi 2006,
pet. filed) ("A co-indictee is an accomplice as a matter of law.") (citing Hendricks v.
State, 508 S.W.2d 633, 634 (Tex. Crim. App. 1974)).

 Under Texas law, a conviction cannot stand upon an accomplice's testimony
unless other evidence tending to connect the defendant to the crime corroborates the
testimony. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). Accordingly, in
reviewing the record to determine whether there is "other evidence tending to connect
the defendant with the offense committed," we exclude from consideration all
testimony that needs to be corroborated under article 38.14. See id.

 The "tends-to-connect" standard presents a low hurdle for the State. Patterson,
204 S.W.3d at 859; see Dowthitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App.
1996); Munoz v. State, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993). As this Court
stated in Patterson, 

 "After all, the tends-to-connect evidence is unlikely to be the same
evidence that proves guilt beyond a reasonable doubt. If the 'other
evidence' required by the corroboration statute were always sufficient for
conviction, there would be no necessity for the State to ever rely on
accomplice testimony in the first place."


Patterson, 204 S.W.3d at 859. Our court of criminal appeals has not formulated a
precise rule concerning the quantum of evidence needed to corroborate the testimony
of an accomplice witness, but it has provided some basic rules for our assistance. 
Dowthitt, 931 S.W.2d at 249; Gill v. State, 873 S.W.2d 45, 48 (Tex. Crim. App.
1994). The evidence used for corroboration does not need to be, in itself, sufficient
to establish guilt beyond a reasonable doubt. Gill, 873 S.W.2d at 48; Munoz, 853
S.W.2d at 559; see Cox v. State, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992). Nor
must it directly link the accused to the commission of the crime. Dowthitt, 931
S.W.2d at 249; Gill, 873 S.W.2d at 48; Munoz, 853 S.W.2d at 559; Cox, 830
S.W.2d at 611. While the accused's mere presence in the company of the accomplice
before, during, and after the commission of the crime is insufficient by itself to
corroborate accomplice testimony, evidence of the accused's presence, combined with
other suspicious circumstances, may tend to connect the accused to the crime. 
Patterson, 204 S.W.3d at 859; see Dowthitt, 931 S.W.2d at 249; Gill, 873 S.W.2d
at 49; Cox, 830 S.W.2d at 611. Even apparently insignificant incriminating
circumstances may sometimes afford satisfactory evidence of corroboration. 
Patterson, 204 S.W.3d at 859-60; see Dowthitt, 931 S.W.2d at 249; Munoz, 853
S.W.2d at 559. Further, the absence of "smoking gun" evidence does not invalidate
evidence that does connect the accused to the crime. Trevino v. State, 991 S.W.2d
849, 852 (Tex. Crim. App. 1999); Patterson, 204 S.W.3d at 860. The corroboration
is considered insufficient, however, if it merely shows the commission of the offense. 
Cocke, 201 S.W.3d at 747.

The Independent Evidence


 Here, both victims testified that a man came up behind them and took their
purses, which contained the victims' personal checks. After each robbery, the man
got into the passenger seat of a car, which sped away. This shows that two people
were involved in the robberies.

 In his statement to Officer Lee, appellant admitted to being with Montez during
their joint endeavor to cash a check for drugs. He and Montez went inside the Fiesta
Mart where Montez tried to cash a check. When Montez told him it was a no go,
appellant asked Montez if he knew of anybody else to cash the check. Montez said
that he did. So, they went to the H.E.B. where a man picked up Montez to cash the
check Montez had with him. David Reyes testified that he was the person who helped
Montez cash the $476.32 check. Reyes's testimony showed that appellant and
Montez wanted him to cash the check and that appellant wanted the money that day.

 Forensic evidence showed that one of appellant's fingerprints were on the
$476.32 check. In his statement, appellant told Officer Lee that his (appellant's)
handwriting might be on this check. Rosa Barnes testified that she neither wrote out
the check nor authorized anyone to write it out for her.

 When the accused possesses fruits of the crime, such as stolen property at the
time of a robbery, this fact tends to connect the accused with the commission of the
crime and may be sufficient corroboration of accomplice testimony to warrant a
conviction. Edwards v. State, 427 S.W.2d 629, 633 (Tex. Crim. App. 1968); Wincott
v. State, 59 S.W.3d, 691,698 (Tex. App.-Austin 2001, pet. ref'd). Even though
appellant did not have exclusive possession of the stolen checks, one court has stated
that joint possession of stolen items may be sufficient to satisfy the corroboration
requirements. See Cao v. State, 183 S.W.3d 707, 711 (Tex. App.Houston [1st
Dist.] 2005, pet. ref'd).

 Having reviewed the independent evidence, we conclude that the combined
weight of the non-accomplice evidence tends to connect appellant to both robberies. 
We hold, therefore, that the requirement of article 38.14 has been satisfied. See
Edwards, 427 S.W.2d at 633; Cao, 183 S.W.3d at 711; see also Patterson, 204
S.W.3d at 859 (evidence of the accused's presence, combined with other suspicious
circumstances, may tend to connect the accused to the crime). We overrule issue
two. 

C. Legal and Factual Sufficiency of the Evidence

 By issue three, appellant challenges the legal and factual sufficiency of the
evidence to support the convictions. In reviewing the legal sufficiency of the evidence,
we view all the evidence in the light most favorable to the verdict in order to determine
whether any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Hampton
v. State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005). This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh
the evidence, and to draw reasonable inferences from basic facts to ultimate facts. 
Jackson, 443 U.S. at 319. The trier of fact is the sole judge of the weight and
credibility of the evidence. See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979);
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when
performing a legal sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the fact-finder. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any
inconsistencies in the evidence in favor of the judgment. Curry v. State, 30 S.W.3d
394, 406 (Tex. Crim. App. 2000).

 When reviewing the factual sufficiency of the evidence, we view all the
evidence in a neutral light, favoring neither party. Watson v. State, 204 S.W.3d 404,
414 (Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App.
2005). We will set the verdict aside only if: (1) the evidence supporting the
conviction, although legally sufficient, is nevertheless so weak that the fact-finder's
determination is clearly wrong and manifestly unjust; or (2) the verdict is against the
great weight and preponderance of the evidence. Watson, 204 S.W.3d at 414-15,
417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We cannot
conclude that a conviction is clearly wrong or manifestly unjust simply because we
would have voted to acquit. Watson, 204 S.W.3d at 417. In other words, we may
not simply substitute our judgment for the fact-finder's judgment. Johnson, 23
S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). To
reverse for factual sufficiency, we must determine, with some objective basis in the
record, that the great weight and preponderance of the evidence contradicts the
verdict. Watson, 204 S.W.3d at 417. In examining a factual sufficiency challenge,
we defer to the fact-finder's determination of the credibility of the evidence. 
Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

 A person commits aggravated robbery if, in the course of committing theft and
with intent to obtain or maintain control over the property, he or she intentionally,
knowingly, or recklessly causes bodily injury to a person sixty-five years of age or
older. Tex. Penal Code Ann. § 29.02(a)(3)(A) (Vernon 2003). Intent can be inferred
from the acts, words, and conduct of the defendant. Patrick v. State, 906 S.W.2d
481, 487 (Tex. Crim. App. 1995); Lee v. State, 964 S.W.2d 3, 8 (Tex. App.Houston
[1st Dist.] 1997, pet. ref'd).

 In this case, neither victim identified appellant as the robber. However,
circumstantial evidence, by itself, may be enough to support a conviction. Kutzner v.
State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); see Smith v. State, 965 S.W.2d
509, 515 (Tex. Crim. App. 1998). It is not necessary that every fact point directly
and independently to the defendant's guilt; it is enough if the conclusion is warranted
by the combined and cumulative force of all the incriminating circumstances. Barnes
v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1994). In this case, a rational jury could have
determined the following from the evidence: (1) two persons were involved in the
robbery of each victim; (2) a man stole the victims' purses, which contained their
personal checks; (3) during the robberies, both victims suffered bodily injury; (4) both
victims were sixty-five years of age or older at the time each was robbed; (5) Montez
drove the vehicle to and from both robberies; (6) appellant accosted the victims and
took their purses; (7) after the robberies, appellant was with Montez when they tried
to cash the stolen checks; (8) appellant's fingerprint was found on the $476.32 check,
which was inside Rosa Barnes' stolen purse; and (9) Barnes, neither wrote out the
$476.32 check nor authorized anyone to write it out for her.

 Appellant provided controverting evidence and argument that (1) neither victim
could identify him as the person who robbed them, (2) the victims gave different
descriptions of the man who robbed them, (3) Montez used crack cocaine, (4) Montez
lied to investigators about where he got one of the stolen checks, and (5) appellant
argues that his fingerprint on one of the stolen checks and his presence with Montez
when Montez tried to cash the stolen checks did not link him to the aggravated
robberies.

 Based on a neutral review of all the evidence, we conclude that the evidence is
not so obviously weak or so greatly outweighed by contrary proof that it would not
support the findings of guilty beyond a reasonable doubt. See Watson, 204 S.W.3d
at 414-17. Viewing the evidence in the light most favorable to the verdict, we also
conclude that a rational fact finder could have found the essential elements of the
offenses beyond a reasonable doubt. See Jackson, 443 U.S. at 319. Issue three is
therefore, overruled.

D. Ineffective Assistance of Trial Counsel

 By issue four, appellant complains he received ineffective assistance of trial
counsel. To prove ineffective assistance of trial counsel, appellant must satisfy the
two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984);
Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). First, he must
show that counsel's representation fell below an objective standard of reasonableness. 
Second, he must show there is a reasonable probability that, but for counsel's errors,
the result of the trial proceedings would have been different. Id. "A reasonable
probability is a probability sufficient to undermine confidence in the outcome." Id. at
694. Determining whether this test has been satisfied on appeal is by judging the
totality of the representation, not by focusing on isolated acts or omissions. Jaynes
v. State, 216 S.W.3d 839, 851 (Tex. App.Corpus Christi 2006, no pet.). Generally,
isolated failures by counsel do not constitute error in light of the sufficiency of the
overall representation. Id. In order for appellant to overcome this court's presumption
of reasonable professional assistance, "'any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness.'" Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005)
(quoting Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

1. Montez's Videotaped Interview to the Police

 In his first complaint, appellant argues trial counsel was ineffective because he
allowed the jury to view Montez's videotaped interview in which Montez mentioned
that appellant had been previously incarcerated. Trial counsel admitted Montez's
videotaped interview into evidence for the purpose of cross examining Officer Ralph
Lee. We point out that if counsel's reasons for his or her conduct do not appear in the
record and there is "at least the possibility" that the conduct could have been
grounded in legitimate trial strategy, we will defer to counsel's decisions and deny
relief on an ineffective-assistance claim on direct appeal. Garza v. State, 213 S.W.3d
338, 348 (Tex. Crim. App. 2007). Here, trial counsel's reasons for his actions or
intentions do not appear in the record, and his conduct could have been part of a
reasonable trial strategy. Without more, we must defer to counsel's decisions and
deny relief. See id. 

2. Videotape Showing Appellant in Jail Clothing 

 Next, appellant complains trial counsel was ineffective because he failed to
object when the trial court let the jury watch his videotaped interview to the police. 
He argues the videotape, which showed him wearing jail clothing, prejudiced him
before the jury.

 Throughout this interview, appellant denied any knowledge of the purse
snatchings, and he stated several times that he did not know where Montez got the
stolen checks. Because there is "at least the possibility" trial counsel's conduct could
have been grounded in legitimate trial strategy, we will defer to counsel's decisions
and deny relief on an ineffective assistance claim on direct appeal. Garza, 213 S.W.3d
at 348. Here, trial counsel's reasons for his actions or intentions do not appear in the
record, and his conduct could have been part of a reasonable trial strategy. Without
more, we must defer to counsel's decisions and deny relief. (3)
 See id. 

3. Comments Contained in Appellant's Videotaped Interview to the Police

 Appellant asserts trial counsel was ineffective because he did not object to and
redact certain comments contained in his videotaped interview to the police. The
complained-of comments are as follows: (1) appellant's remark that he had a "record,"
(2) a comment from an interrogating police officer that he had contacted appellant's
parole officer about the two robberies, and (3) a comment from an interrogating police
officer that when appellant returned to jail, appellant could see the new charges.

 With regard to appellant's remark about his record, he stated that his record did
not show that he was a good person. Immediately after making that remark, he said
that he really was (a good person) and that he came from a good family. Concerning
the remarks about appellant's parole officer and appellant's return to jail, the interview
showed that appellant would not admit to any involvement in the robberies and that
he insinuated that the police were not sure he was involved. This perturbed his
interrogators and prompted one of them to tell appellant that he had notified his parole
officer about the robberies and that when appellant returned to jail, appellant could see
the robbery charges. Despite these remarks, appellant would not admit to the
robberies. Because there is "at least the possibility" trial counsel's conduct could have
been grounded in legitimate trial strategy, we will defer to counsel's decisions and
deny relief on an ineffective-assistance claim on direct appeal. Garza, 213 S.W.3d at
348. In this case, trial counsel's reason's for his actions or intentions do not appear
in the record, and his conduct could have been part of a reasonable trial strategy. 
Without more, we must defer to counsel's decisions and deny relief. See id. Issue
four is overruled.

 The trial court's judgment is affirmed.

 


 

 ROSE VELA

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 2nd day of August, 2007.
1. Our reading of the record indicates the $150 check was not recovered.
2. In any event, both victims were over sixty-five years old when appellant committed the
offenses. Further, the charge instructed the jury that "A person commits the offense of Aggravated
Robbery if, in the course of committing theft and with intent to obtain or maintain control of the
property, he intentionally, knowingly or recklessly causes bodily injury to another who is 65 years of age
or older." 
3. In Estelle v. Williams, 425 U.S. 501, 504-06 (1976), the United States Supreme Court held
that a defendant's presumption of innocence is undermined and his or her right to a fair trial violated
when the state compels him or her to stand trial in prison or jail clothing. See United States v. Harris,
703 F.2d 508, 509-11 (11th Cir. 1983) (holding a defendant's due process rights were violated when
he was compelled to wear prison clothing during jury voir dire). In Estelle, the supreme court
emphasized that the prison clothing was a "constant reminder of the accused's condition" and "a
continuing influence throughout the trial" that presented an "unacceptable risk" of "impermissible factors
coming into play" and corrupting a juror's judgment. See Id. at 504-05. Here, appellant's appearance
on videotape wearing jail clothing constituted neither a "constant reminder" of his condition nor "a
continuing influence throughout the trial." See Estelle, 425 U.S. at 504-05. Therefore, the videotape
did not present an "unacceptable risk" that would either corrupt the jury's judgment or undermine the
presumption of innocence. See id.

 Furthermore, the jurors should not have been surprised to learn from the videotape that, at some
time before trial, appellant had been in jail. Obviously, a defendant must be arrested and taken to jail
to begin the criminal process.