TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00190-CR






Preston James Korell, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT

NO. 7955, HONORABLE JOE CARROLL, JUDGE PRESIDING




O P I N I O N



 A jury found Preston James Korell guilty of possessing methamphetamine in an
amount greater than four grams but less than 200 grams with intent to deliver, a first-degree felony. 
See Tex. Health & Safety Code Ann. § 481.112 (West 2003). Korell elected to have the jury assess
punishment, and the jury assessed ten years' confinement and a $10,000 fine. Korell's criminal
responsibility for the offense was proved primarily through the testimony of two witnesses,
William Kaman and Kristin Clem. The district court instructed the jury that Kaman was an
accomplice as a matter of law but submitted the question of Clem's status as an accomplice to the
jury as a fact question. By two points of error, Korell argues that the trial court should have found
that Clem was an accomplice as a matter of law and that, as an accomplice, her testimony could not
be used to corroborate Kaman's testimony connecting Korell to the contraband. We will affirm the
judgment of conviction.


BACKGROUND

 On January 23, 2006, William Kaman was driving a truck when he lost control and
crashed into the guardrail on the bridge across Antelope Creek on State Highway 190 in western
Lampasas County. Kaman was seriously injured and pinned in the vehicle. One of the first persons
to arrive at the scene was a delivery truck driver, Charles Burns, who actually saw Kaman's truck
come to rest on the bridge. Burns said that he saw the passenger, who he described as a Hispanic
man, emerge from the wrecked truck and try to assist the injured driver. The passenger then
approached Burns and told him that he needed help in hiding a deer rifle, stating that "he couldn't
be caught with it." According to Burns, the passenger then left in the direction of San Saba with one
of "two other Hispanic guys" who had arrived on the scene prior to the arrival of law enforcement. 
 Department of Public Safety Trooper Michael Tatum testified that he arrived to
investigate the accident and, after speaking with Burns, began searching the area for the rifle. Tatum
stated that he searched the area under the bridge and found the rifle in the creek bed, alongside a
backpack and a camera bag containing packages of methamphetamine (1) and assorted drug
paraphernalia. He testified that the location of the rifle and the bags containing the drugs suggested
that the items had been dropped from the bridge above and slid down an incline into the creek bed. 
Prior to Kaman being starflighted to Austin for treatment, Trooper Tatum asked Kaman to identify
the passenger who was with him, and Kaman said, "Mesa."

 On two separate occasions, law enforcement officials showed Burns photo spreads
containing suspects. The first time, Korell's photo was not included in the array and Burns identified
one of the men in the photographs as being the passenger. The second time, Korell's photo was
included in the array. Burns, however, did not identify Korell as the person he had spoken to at
the accident site. There was no physical evidence linking Korell to the accident scene or
to the contraband. 

 At Korell's trial, the State attempted to prove that Korell had been the passenger in
Kaman's truck and was therefore linked to the drugs found near the accident site through the
testimony of Kristin Clem and William Kaman. Clem testified that on January 23, 2006, she was
at a house in San Saba County, along with Randy Carr and John Storm, when Kaman and Korell
arrived in a truck and purchased two and half ounces of methamphetamine from Carr. (2) Kaman and
Korell then left the house together. Later that same day, Clem, Carr, and Storm were at a gas station
in San Saba when a silver champagne Chevy truck driven by a Hispanic man drove up with Korell
as the passenger. According to Clem, Korell told her about the accident and said that he had
"stashed" the methamphetamine and the gun. Clem gave the driver of the Chevy truck twenty
dollars "for gas money for dropping [Korell] off." Clem and Carr then left in Carr's vehicle to go
to Dallas; Korell and Storm left the gas station in Clem's vehicle to return to Austin. Clem testified
that Korell is also known as "Mesa." Clem further testified that in January 2006 she was employed
as a confidential informant by the Round Rock Police Department working on methamphetamine
cases, although she denied working as a confidential informant on that particular day. She admitted
to knowing what was going on at the house--that there were illegal drugs present and that Korell
and Kaman were there to purchase drugs from Carr.

 Kaman admitted on the stand that he and Korell had traveled from Austin to San Saba
to pick up a supply of methamphetamine. Kaman said that they both went into the house, Kaman
"got high," and then he and Korell left together with the drugs that Korell had just purchased. 
Kaman said that before they left Austin, Korell had talked to Clem about going to the San Saba
house and getting the drugs. Kaman did not recall much about the accident. He was badly injured
and a portion of his leg had to be amputated. The police talked to him after he was out of the
hospital and he made two written statements that were admitted into evidence at the trial. In his first
statement, Kaman denied being a party to buying drugs and identified his passenger by the name of
Mesa. In a second statement, he identified his passenger as Preston Korell. Both of these sworn
statements contained inconsistences from Kaman's testimony at trial as to Kaman's complicity in
the purchase of the drugs.

 At the close of the evidence, defense counsel moved for a directed verdict, arguing
that both Kaman and Clem were accomplices as a matter of law and that there was no other evidence
that tended to connect Korell to the contraband. Specifically, the defense argued that Clem was an
accomplice based on "her testimony that she participated in the original sale of narcotics" that
provided the basis for this prosecution and, further, because she assisted Korell in avoiding
apprehension after the accident. The State admitted that Kaman was an accomplice as a matter of
law but argued that Kaman's own out-of-court statements identifying the passenger as Mesa and later
as Korell provided sufficient corroboration for his in-court testimony. As for Clem, the State told
the trial court that "she may be an accomplice to an offense in San Saba County but she is not to the
offense committed in Lampasas County." The trial court overruled Korell's motion for directed
verdict, making a finding that Kaman was an accomplice as a matter of law; however, the court did
not find that Clem was an accomplice as a matter of law but instead submitted Clem's status as an
accomplice to the jury to be determined as a fact issue.

DISCUSSION

 Korell contends in his first issue that Clem is an accomplice as a matter of law and
that her testimony cannot be used to corroborate Kaman's testimony; thus, the trial court erred in
failing to grant Korell's motion for a directed verdict. In his second issue, he complains that the
evidence was insufficient to allow the jury to find that Clem was an accomplice as a matter of fact.


Standard of Review

 In Texas, a conviction cannot be had upon the testimony of an accomplice unless that
testimony is corroborated by other evidence tending to connect the defendant with the offense. 
Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005). The testimony of an accomplice witness is
inherently untrustworthy and should be received and acted on with caution because it is
"evidence from a corrupt source." (3) Walker v. State, 615 S.W.2d 728, 731 (Tex. Crim. App. 1981);
Wincott v. State, 59 S.W.3d 691, 698 (Tex. App.--Austin 2001, pet. ref'd). This accomplice-witness
rule creates a statutorily imposed review and is not derived from federal or state constitutional
principles that define the factual and legal sufficiency standards. Druery v. State, 225 S.W.3d 491,
498 (Tex. Crim. App. 2007). Thus, to weigh the sufficiency of the corroborative evidence, we
disregard the accomplice's testimony and examine the remaining portions of the record to ascertain
whether there is evidence tending to connect the accused with the commission of the crime. 
Solomon v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); Maynard v. State, 166 S.W.3d 403,
410 (Tex. App.--Austin 2005, pet. ref'd). Because the standard is "tendency to connect," rather than
a rational-sufficiency standard, the corroborating evidence need not be sufficient by itself to establish
guilt beyond a reasonable doubt. Id. If the combined weight of the non-accomplice evidence tends
to connect the defendant to the offense, then the requirement of article 38.14 has been fulfilled. 
Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). However, evidence that merely
proves that the offense was committed does not suffice. Id. We review a claim that accomplice-witness testimony is insufficiently corroborated in the light most favorable to the verdict. See
Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997); Gill v. State, 873 S.W.2d 45, 48
(Tex. Crim. App. 1994).


Determining Accomplice Status

 "An accomplice is an individual who participates with a defendant before, during, or
after the commission of the crime and acts with the requisite culpable mental state." Cocke v. State,
201 S.W.3d 744, 748 (Tex. Crim. App. 2006). Further, the accomplice witness's participation must
involve an affirmative act that promotes the commission of the offense with which the defendant is
charged. Paredes v. State, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). There must be sufficient
evidence to connect the alleged accomplice to the criminal offense as a "blameworthy participant." 
Id. (quoting Blake v. State, 971 S.W.2d 451, 454-55 (Tex. Crim. App. 1998)). Whether the alleged
accomplice-witness is actually charged or prosecuted for his participation is irrelevant to the
determination of accomplice status; rather, we look to see if there is sufficient evidence in the record
"to support a charge against the witness alleged to be an accomplice." Blake, 971 S.W.2d at 455. 
"Mere presence at a crime scene does not make an individual an accomplice, nor is an individual an
accomplice merely because he has knowledge about a crime and fails to disclose that knowledge." 
Cocke, 201 S.W.3d at 748. Moreover, a person's complicity with the accused in the commission of
another offense, apart from the offense charged, does not make him an accomplice. Druery,
225 S.W.3d at 498.

 "A witness may be an accomplice either as a matter of law or as a matter of fact; the
evidence in a case determines what jury instruction, if any, needs to be given." Cocke, 201 S.W.3d
at 747. An individual is an accomplice as a matter of law if he could be prosecuted for the same
offense with which the defendant is charged, or a lesser-included offense of that charge. Druery,
225 S.W.3d at 498; Cocke, 201 S.W.3d at 748. Unless the evidence clearly shows that the witness
is an accomplice as a matter of law, a question about whether a particular witness is an accomplice
is properly left to the jury with an instruction defining the term "accomplice." Id. at 748. Even if the
evidence weighs in favor of the conclusion that the witness is an accomplice as a matter of law, the
trial court may still submit the issue to the jury if it has any doubt as to whether a witness is an
accomplice witness. Kunkle v. State, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986). 

 If the trial court determines that a witness is an accomplice as a matter of law, the
court is required to provide an accomplice-witness instruction to the jury. DeBlanc v. State,
799 S.W.2d 701, 708 (Tex. Crim. App. 1990). But when the parties present conflicting or unclear
evidence as to whether a witness is an accomplice, the jury must first determine whether the witness
is an accomplice as a matter of fact. Blake v. State, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998). 
Whether an accomplice-witness instruction is justified requires a case-specific and fact-specific
inquiry. Cocke, 201 S.W.3d at 748.

 Because Clem had not been indicted, she was an accomplice-witness as a matter of
law only if the evidence shows that she could be prosecuted for the same offense as Korell or for a
lesser-included offense of that charge. Korell was charged with the possession of 70.8 grams of
methamphetamine with intent to deliver; a lesser-included offense of that charge would be simple
possession. See Upchurch v. State, 23 S.W.3d 536, 538 (Tex. App.--Houston [1st Dist.] 2000,
pet. ref'd). A person is guilty of possession if he knowingly or intentionally exercises actual care,
control, custody, or management over a controlled substance. See Tex. Health & Safety Code Ann.
§§ 481.002(38), .115(a) (West Supp 2007); Tex. Penal Code Ann. § 1.07(a)(39) (West Supp. 2007). 
Because of the lack of evidence showing that Clem exercised actual control or management over any
of the drugs at issue, let alone possessed them with intent to deliver, her criminal liability, if any,
must arise under the law of parties. See, e.g., Sewell v. State, 578 S.W.2d 131, 136 (Tex. Crim. App.
1979). A person may be shown by circumstantial evidence to be a party to the possession of a
controlled substance, viewing the evidence of events before, during, and after commission of the
offense. Gutierrez v. State, 628 S.W.2d 57, 66-67 (Tex. Crim. App. 1982). In determining whether
one has participated as a party, reliance may be placed on actions of the parties which show an
understanding and common design to do a certain act. Id. (quoting Tarpley v. State, 565 S.W.2d
525, 529 (Tex. Crim. App. 1978)).

 Based on her own testimony, Clem knew that illegal drugs were in the San Saba
house, was aware of Korell and Kaman's purpose in coming to the house, and was present during
the drug transaction between Korell and Carr. Further, Kaman testified that prior to leaving Austin,
Korell had a conversation with Clem about going to the San Saba house to purchase drugs. 
Reviewing all of the testimony regarding her participation before and during the commission of the
offense, we do not think that the evidence is sufficient to clearly support a charge against Clem for
possession, making her an accomplice as a matter of law. See Blake, 971 S.W.2d at 455. Neither
Clem's presence at the San Saba house nor her knowledge that Korell was purchasing drugs from
Carr (and failure to report that offense to authorities) makes her an accomplice to Korell's
possession. See Cocke, 201 S.W.3d at 748. If anything, the evidence that she coordinated Korell's
meeting with Carr establishes that she was complicit with Carr in the offense of delivery of a
controlled substance; (4) however, a person's complicity in the commission of another offense, apart
from the offense charged, does not make him an accomplice to the charged offense. See Druery,
225 S.W.3d at 498. 

 Korell also contends that Clem's conduct after the accident is evidence that she was
a party to his possession of methamphetamine. In so arguing, he points to the fact that Clem gave
money to the driver who gave Korell a ride from the accident scene and that she provided her own
truck for Korell to use when he needed transportation. Korell maintains that because Clem testified
that Korell told her that he had "stashed the dope," Clem's actions are evidence of her participation
in furtherance of his offense because she would have assumed that Korell would try to recover the
stashed methamphetamine. Clem testified, however, that when she allowed Korell to borrow her
truck, Korell "went to Austin." There is no evidence that Korell actually returned to the accident
scene to recover the drugs, or that Clem believed he would do so. Without evidence that Clem
intended by her conduct to help Korell possess (or repossess) the drugs that were left at the scene of
the accident, we cannot conclude that Clem encouraged or aided Korell in committing the
charged offense. 

 While Clem's testimony might be viewed as inconsistent concerning her role in
Carr's alleged drug-dealing activities and her involvement with these individuals in her capacity as
a confidential informant for the Round Rock police department, the evidence as a whole does not
clearly establish that she was susceptible to prosecution for possession of a controlled substance or
possession with intent to deliver. (5) Because the evidence does not clearly show that Clem was an
accomplice to Korell's offense or a lesser-included charge, her status as an accomplice was properly
left to determination by the jury as a fact issue. See Cocke, 201 S.W.3d at 748. Accordingly, the
trial court did not err in denying Korell's motion for a directed verdict on the basis that Clem was
an accomplice as a matter of law and submitting the issue of her accomplice status to the jury. We
overrule Korell's first issue.


Sufficiency of the Evidence

 In his second point of error, Korell argues that even if Clem was not an accomplice
as a matter of law, the evidence shows that she was an accomplice as a matter of fact. Therefore,
because her testimony could not be used to corroborate Kaman's testimony--including Kaman's
identification of Korell as "Mesa," his passenger--the evidence supporting Korell's conviction is
insufficient. As we understand it, Korell's challenge addresses the factual sufficiency of the jury's
implied finding that Clem was not an accomplice as a matter of fact. Evidence is factually
insufficient if it is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or, after
considering the conflicting evidence, the jury's verdict is against the great weight and preponderance
of the evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Unless the
record clearly reveals that a different result is appropriate, we defer to the jury's determination
concerning the weight to place upon conflicting testimony. Johnson v. State, 23 S.W.3d 1, 8
(Tex. Crim. App. 2000).

 By its verdict, the jury found that Clem was not an accomplice as a matter of fact. 
See McDonald v. State, 513 S.W.2d 44, 48 (Tex. Crim. App. 1974). The jury heard evidence that
Korell contacted Clem about going to the San Saba house to purchase drugs, that Clem was present
when Korell purchased the drugs from Carr, and that Clem helped Korell secure transportation back
to Austin after he stashed the drugs at the accident scene. However, there was no testimony
indicating that Clem and Korell had a common scheme or plan to possess or deliver the drugs
together once he acquired them from Carr or that she had any pecuniary interest in Korell's future
sales of the drugs. Rather, Clem testified that while she was aware that Korell was acquiring drugs
and was present during the sale of 2.5 ounces of methamphetamine, awareness and presence are
clearly insufficient to establish her liability as a party. Moreover, the jury could reasonably have
concluded that Clem's liability as a party to any of the possible offenses committed ended when
Korell took possession of the drugs and left the San Saba house with Kaman. In addition, the
evidence rationally supports an inference that Korell had already relinquished possession of the drugs
at the accident scene without intending to repossess them by the time he came upon Clem and Carr
at the gas station, undermining Korell's assertion that she was encouraging, aiding, or attempting to
aid his offense by allowing him to use her truck.

 We have already held that, under the facts of this case, Clem was not shown to be an
accomplice-witness as a matter of law. Thus, her status as an accomplice-witness was a question
of fact, the trial court properly charged the jury on the issue, and the jury resolved that question
against Korell, as it was entitled to do based on the evidence presented. Having reviewed all of the
evidence, giving proper deference to the jury on matters of weight and credibility, we do not think
that the jury's finding on this issue was clearly wrong, manifestly unjust, or against the great weight
and preponderance of the evidence. Thus, it was appropriate for Clem's testimony to be considered
for the purpose of corroborati ng Kaman's testimony. As corroborating evidence, Clem's testimony
satisfies the requirement of tending to connect Korell to the charged offense. (6) See Cathey,
992 S.W.2d at 462. Viewing Korell's claim in the light most favorable to the jury's verdict, we hold
that Kaman's accomplice testimony was sufficiently corroborated, see Hernandez, 939 S.W.2d at
176; Gill, 873 S.W.2d at 48, and overrule Korell's second issue.




CONCLUSION

 Because Korell was not entitled to a directed verdict on the basis that the State's
witness, Kristin Clem, was an accomplice as a matter of law, and because the evidence was sufficient
to support the jury's finding that she was not an accomplice as a matter of fact, we affirm the
judgment of conviction.

 

 __________________________________________ Diane Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: April 24, 2008

Publish
1. In total, 70.8 grams (about 2.5 ounces) of methamphetamine were recovered at the scene.
2. The house in question, according to Clem, was a double-wide trailer owned by
Randy Carr's sister.
3. Wigmore explained the policy behind the rule as follows:


The reasons which have led to this distrust of an accomplice's testimony are not far
to seek. He may expect to save himself from punishment by procuring the conviction
of others. It is true that he is also charging himself, and in that respect he has burned
his ships. But he can escape the consequences of this acknowledgment, if the
prosecuting authorities choose to release him, provided he helps them to secure the
conviction of his partner in crime.


 7 Wigmore, Evidence § 2057 (Chadbourn rev. 1978), at 417.
4. Under the law of parties, Clem's conduct could arguably be characterized as an effort to
solicit, encourage, direct, aid, or attempt to aid the offense of delivery, based on Kaman's testimony
that she was in contact with Korell and that she was acting as a go-between for Korell and Carr. See,
e.g., Lecrone v. State, 889 S.W.2d 585, 587 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd).
5. The defense never contended, nor was there any evidence, that Clem was acting as a
confidential informant on the day in question. If she had been, the code of criminal procedure
requires that her testimony be corroborated "by other evidence tending to connect the defendant with
the offense committed." See Tex. Code Crim. Proc. Ann. art. 38.141 (West 2005). At least one
court has held that an informant's testimony may not be used to corroborate an accomplice's
testimony, and vice versa. See Patterson v. State, 204 S.W.3d 852, 859 (Tex. App.--Corpus Christi
2006, pet. ref'd).
6. The State argues in the alternative that even if Clem was an accomplice as a matter of law,
Kaman's testimony was still corroborated by other evidence--namely, Kaman's own out-of-court
statements that he made to police prior to Korell's trial when he identified Korell as his passenger. 
The State's argument is flawed, however, because "an accomplice cannot corroborate himself by his
own statements made to third persons." See McDuff v. State, 939 S.W.2d 607, 612 (Tex. Crim. App.
1997) ("hearsay from an accomplice cannot corroborate the accomplice's trial testimony"); see also
Maynard v. State, 166 S.W.3d 403, 414 n.6 (Tex. App.--Austin 2005, pet. ref'd).