Opinion filed January 30, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed January 30,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00181-CR

                                                    __________

 

                                 REBEKAH A. HAWKINS, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 42nd District Court

                                                        Callahan
County, Texas

                                                     Trial
Court Cause No. 6529

 



 

                                                                   O
P I N I O N

 

The
jury convicted Rebekah A. Hawkins of the offense of injury to a child.  The
trial court assessed punishment at confinement for two years but suspended the
imposition of the sentence and placed appellant on community supervision for
three years.  We affirm.  

                                                                         Issues








Appellant
presents five issues for review.  In the first issue, she challenges the legal
and factual sufficiency of the evidence.  In the second issue, she argues that
the trial court committed egregious error by failing to charge the jury that
her culpable mental state must apply to the result of her conduct.  In her
third issue, appellant contends that the trial court committed egregious error
by failing to give an accomplice witness instruction to the jury.  In the
fourth issue, appellant complains of incurable, prejudicial comments made by
the prosecutor.  In the final issue, appellant complains that she received
ineffective assistance of counsel at trial.  

                                                        Sufficiency
of the Evidence

The
jury found that appellant B
acting alone or as a party with the intent to promote or assist the commission
of the offense by the victim=s
mother B encouraged,
aided, or attempted to aid the victim=s
mother to cause bodily injury to the victim by cutting her with a scalpel.  We
will apply the following well-recognized standards of review to appellant=s sufficiency challenges in
her first issue.  To determine if the evidence is legally sufficient, we must
review all of the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim. App.
2000).  To determine if the evidence is factually sufficient, we must review
all of the evidence in a neutral light and determine whether the evidence supporting
the verdict is so weak that the verdict is clearly wrong and manifestly unjust
or whether the verdict is against the great weight and preponderance of the
conflicting evidence.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996).  Evidence is sufficient to support a conviction under the law of parties
where the defendant is physically present at the commission of the offense and
encourages the commission of the offense either by words or other agreement.  Beier
v. State, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985).  








The
record shows that the victim in this case was the seven-year-old daughter of
Deziree Gideon.  The victim had an infection on her left inner thigh in her
groin area.  The infection originally appeared as a golf-ball size lump.  The
victim had been taken to the hospital twice for treatment of the infection,
which was associated with cat scratch fever, and had received antibiotics and
Tylenol with codeine.  However, the infection kept getting worse.  The victim
and appellant=s
daughter were friends, and the victim spent the night at appellant=s house on September 14,
2003, and stayed there during the day of September 15.  At appellant=s house on the evening of
September 15, a procedure was performed on the victim to lance the boil or
remove the infection.  During the procedure, Gideon used a scalpel to make an
incision into the infected area.  The victim never woke up or regained
consciousness after the procedure, and she was pronounced dead the next day at
Cook Children=s
Medical Center.  The cause of death could not be determined by the medical
examiner.

Gideon
and appellant were the only adults present at the time of the procedure.  Each
testified at trial and gave her version of what occurred at appellant=s house.  Gideon, who had
already pleaded guilty to the offense of negligent injury to a child, testified
that she had known appellant for about ten years and that appellant held
herself out as possessing specialized knowledge with respect to nursing and medical
procedures and as being a physician=s
assistant.  On the day of the offense, appellant told Gideon that the victim
was not getting better.  Appellant suggested that they, not a hospital or
doctor, do something themselves before the infection continued to spread. 
Gideon testified that appellant told her A[t]hat
we needed to try to see if we could remove it@
before the victim got worse.  Gideon and appellant decided to lance the wound
to get the infection out.  Gideon left appellant=s
house and returned later with a scalpel.  The victim was conscious and was
playing on the computer when Gideon left; however, when Gideon returned, the
victim was slurring her speech and falling asleep in her ice cream B Alike she was drugged.@  Appellant told Gideon that she had given the
victim something because she did not want the victim to remember the procedure
or wake up scared.  When the victim was completely unconscious, they took her
into a room, which was Alike
a treatment room/bedroom,@
and put her on a bed.  The room contained medical equipment and books.  Gideon
testified that appellant drew up some lidocaine and something else to keep the
victim from bleeding too badly and that Gideon, with instructions from
appellant, injected it into the victim=s
leg.  According to Gideon, the needle and lidocaine were furnished by
appellant.  Gideon then cut into the skin around the infection with a scalpel. 
Appellant squeezed the wound and suggested that Gideon cut deeper because she
had not yet reached the infected lymph node.  Gideon testified that she got
sick to her stomach because of the odor, pus, and dead flesh and that appellant
finished the procedure.  Although the victim looked pale and was Abreathing funny,@ appellant assured Gideon
that the victim was okay.  Gideon and the victim stayed at appellant=s house for approximately
two more hours before going home.  Shortly after they arrived at their house,
the victim turned blue and an ambulance was summoned.  The victim was taken to
the emergency room in Abilene and was later transported to Cook=s in Fort Worth.








Gideon
testified that she did not give the victim any medicine or drugs on the day of
the offense but that appellant had Xanax at her house.  A drug screen performed
on the victim when she arrived at the emergency room in Abilene was positive
for a benzodiazepine and an opiate.  Xanax is a benzodiazepine.  The doctor who
treated the victim when she first arrived at the emergency room in respiratory
arrest testified that the combination of Xanax and an opiate would cause the
victim to become sedated, possibly Ato
the point of coma,@
and would depress respiration.

Appellant=s version of the events
differed from Gideon=s
version.  Appellant, a licensed practical nurse and master herbalist and
certified iridologist, testified that she told Gideon that something needed to
be done for the victim.  While at appellant=s
house, the victim was extremely lethargic intermittently and could not walk
without hopping.  Appellant told Gideon how serious the victim=s infection was and
informed Gideon that she needed to take the victim to the hospital.  Gideon
stated that she was not going back to the hospital because the hospital
personnel had treated them Alike
trash.@  Appellant
testified that Gideon gave appellant a tablet that looked like a generic
Xanax.  Appellant told Gideon that the victim did not need that, and appellant
put the tablet away.  Appellant testified that she did give the victim some of
the Tylenol with codeine that had been prescribed for the victim=s pain.   When Gideon said
she wanted to drain the victim=s
leg, appellant told her that that was Acrazy.@  Appellant knew that would
be dangerous because of the artery near the wound.  According to appellant,
Gideon then said, AWell,
nobody=s going to
touch my child but me.@ 
After trying to talk Gideon out of attempting to perform the procedure herself,
appellant allowed Gideon to use her house because Gideon=s residence was filthy.

Appellant
testified that Gideon had two needle syringes, a scalpel, Betadine, and another
injectable liquid that was probably lidocaine with her.  Gideon scrubbed the
area, stuck a needle in, and cut a tiny cut in the victim=s leg; gunk oozed out. 
Gideon cut again, and Ait,
like, popped out into her hair and the side of her face.@  Appellant told Gideon that that was enough
and that she needed to stop.  Appellant then put the dressing on the wound. 
Appellant testified that she did not squeeze the wound or even clean it.








Appellant=s written statement was
also introduced into evidence.  The statement was similar in many respects to
appellant=s
testimony.  However, in her statement, appellant admitted crushing up a tablet
and giving it to the victim.  Appellant said that the tablet came from a bottle
containing Tylenol with codeine that had been prescribed for the victim.  The
evidence showed, however, that the victim=s
Tylenol with codeine was in liquid form.  At trial, appellant recanted that
portion of her statement, testifying that she Awas
confused about it being a tablet or a liquid.@ 
In her statement, appellant also admitted telling Gideon that the amount of
lidocaine that she had drawn up was too much.  Gideon then decreased the amount
before injecting it into the victim=s
leg.  Appellant also stated that Gideon became really sick when the infection
began coming out and that Gideon asked appellant to finish.  Appellant packed
and dressed the wound.

Dr.
Marc Andrew Krouse performed the autopsy on the victim and was not able to
determine the cause of death.  Dr. Krouse also testified that there was no
evidence of serious bodily injury and that he found no drugs in the victim=s urine sample or in the
blood sample that was received from Cook=s.

After
reviewing all of the evidence, we hold that the evidence is both legally and
factually sufficient to support the jury=s
verdict.  The jury, as the trier of fact, was the sole judge of the credibility
of the witnesses and of the weight to be given to their testimony.  Tex. Code Crim. Proc. Ann. art. 36.13
(Vernon 2007), art. 38.04 (Vernon 1979).  As such, the jury was free to believe
or disbelieve all or any part of any witness=s
testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). 
There was evidence from which the jury could have determined that appellant B  with the intent to
promote or assist the commission of the offense by Gideon B encouraged, aided, or
attempted to aid Gideon to cause bodily injury to the victim by cutting her
with a scalpel.  The jury could also have determined that appellant and Gideon
were aware that cutting the victim with a scalpel would cause her bodily
injury, which was defined in the charge as Aphysical
pain, illness, or any impairment of physical condition.@








Appellant
also argues that the evidence corroborating Gideon=s testimony was insufficient to connect
appellant to the offense.  In order to support a conviction based upon the
testimony of an accomplice, there must be corroborating evidence that tends to
connect the accused with the offense.  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005); Reed v. State,
744 S.W.2d 112 (Tex. Crim. App. 1988).  To determine the sufficiency of the
corroboration, we must examine the testimony of the non‑accomplice
witnesses and determine if there is inculpatory evidence Atending to connect@ appellant to the crime.  Reed,
744 S.W.2d at 127.  An accomplice witness need not be corroborated in all her
testimony, and the corroboration need not directly link the accused to the
crime or be sufficient in itself to establish guilt.  Id.  

In
this case, appellant=s
testimony and her statement tend to connect her to the crime.  Appellant
admitted being at the scene of the crime, giving the child some type of
medication, instructing Gideon on the proper amount of lidocaine to use, and
dressing the wound.  Appellant=s
first issue is overruled. 

                                                                    Jury
Charge

In
her next two issues, appellant complains that the jury charge contained
egregious errors: the failure to apply the culpable mental states to the result
and the failure to include an accomplice  witness instruction.  

With
respect to her mens rea argument, appellant correctly states that the offense
of injury to a child is a result-oriented crime.  Haggins v. State, 785
S.W.2d 827, 828 (Tex. Crim. App. 1990).  The jury was properly instructed that
a person acts intentionally Awith
respect to a result of her conduct when it is her conscious objective or desire
to cause the result@
and that a person acts knowingly Awith
respect to a result of her conduct when she is aware that her conduct is
reasonably certain to cause the result.@ 
The application paragraph at issue reads:

Now if you find from the evidence beyond a reasonable doubt
that on or about the 16th day of September, 2003, in Callahan County, Texas,
the defendant, Rebekah A. Hawkins, did then and there, acting alone or as a
party as that term has been previously defined, with intent to promote or
assist the commission of the offense by Deziree K. Gideon, encourage, aid or
attempt to aid Deziree K. Gideon to cause bodily injury to [the victim], a
child fourteen (14) years of age or younger by an act, to wit: cutting the said
[victim] with a scalpel, then you will find the defendant guilty of the lesser
included offense of injury to a child causing bodily injury. 

The charge as
given, including the instructions and the application paragraphs, limited the
culpable mental states to the result of the conduct and did not permit the jury
to find appellant guilty for acting knowingly or intentionally with respect to
the nature of the conduct or the circumstances surrounding the conduct.  Thus,
we hold that the trial court=s
charge regarding the culpable mental states was not erroneous.  Appellant=s second issue is
overruled.  








With
respect to appellant=s
contention relating to the omission of an accomplice witness instruction, the
State concedes that the trial court was required to include such an instruction
even though appellant did not request its inclusion or object to its omission. 
See Blake v. State, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998) (if
witness is accomplice as a matter of law, trial court is under duty to so
instruct jury).  Because the alleged error was not brought to the attention of
the trial court, we must review the entire jury charge, the evidence, the
arguments of counsel, and any other relevant information in order to determine
whether the error was so egregious that
appellant was denied a fair and impartial trial.  Tex. Code Crim. Proc. Ann. art. 36.19
(Vernon 2006); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1985).  Under the egregious harm standard, the omission of an accomplice
witness instruction is generally harmless unless the corroborating, non‑accomplice
evidence is Aso
unconvincing in fact as to render the State=s
overall case for conviction clearly and significantly less persuasive.@  Herron v. State,
86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (quoting Saunders v. State,
817 S.W.2d 688, 692 (Tex. Crim. App. 1991)). 

In
this case, the corroborating evidence was not unconvincing; it included
appellant=s written
statement and her testimony at trial.  As discussed in the first issue, appellant=s own statement and her
testimony tended to connect her to the offense.  Under these circumstances, the
trial court=s failure
to give an accomplice witness instruction did not constitute egregious harm. 
The third issue is overruled.  

                                                                  Jury
Argument

In
her fourth issue, appellant complains that the prosecutor made improper,
incurable, and prejudicial comments during closing argument about Dr. Krouse
and about appellant and Gideon killing the victim.  The State=s closing argument reads in
relevant part: 

Krouse
was irrelevant to me; didn=t
really have anything to say about the case, so we didn=t call him.  Now, as far as him being used by
the State as [Defense Counsel] has told you.  He=s
never testified for me, and I guarantee you after the garbage that came out of
his mouth yesterday he will never be used by the State of Texas in Callahan
County because I was thoroughly disgusted with him yesterday and his complete
incompetence. . . . 

 

Deziree
Gideon -- why did we plead her?  There was two people there when that child was
rendered unconscious and operated on and killed basically.  Two people there. 
Well, we=ve got to
have one of them to testify. . . . 

 








Now, when it comes down to it they want to also have you
question Deziree=s
testimony and her credibility.  And I can certainly see that.  You know, she
did give them some false stories at first.  And why would she do that? . . .
And third, no mother, even Deziree, and with all of the problems that she has,
nobody wants to think that they=ve
killed their own child.  

As
pointed out by the State in its brief, appellant did not object to these
comments.  We hold, therefore, that appellant failed to preserve the issue for
appeal.  Tex. R. App. P. 33.1; Cockrell
v. State, 933 S.W.2d 73 (Tex. Crim. App. 1996).  Moreover, the comments at
issue were not improper; each constituted a summation of the evidence, a
reasonable deduction from the evidence, or an answer to the arguments of
opposing counsel.  See Cantu v. State, 842 S.W.2d 667, 690 (Tex. Crim.
App. 1992).  Appellant=s
fourth issue is overruled.  

                                                             Assistance
of Counsel

In
her final issue, appellant contends that she received ineffective assistance of
counsel at trial.  She complains that trial counsel failed to object to the
jury charge=s failure
to apply the culpable mental states to the prohibited results, failed to
request a jury charge on the defense of emergency medical care, failed to
object or request a jury charge on the defense of necessity, allowed appellant
to testify, failed to object to the omission of an accomplice witness
instruction, and failed to object to the improper comments made during the
prosecutor=s closing
argument.  








In
order to determine whether appellant=s
trial counsel rendered ineffective assistance, we must first determine whether
appellant has shown that counsel=s
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result would
have been different but for counsel=s
errors.  Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v.
State, 988 S.W.2d 770 (Tex. Crim. App. 1999).  We must make every effort to
eliminate the distorting effects of hindsight, to reconstruct the
circumstances, and to evaluate the conduct from counsel=s perspective at the time.  We must indulge a
strong presumption that counsel=s
conduct fell within the wide range of reasonable professional assistance, and
appellant must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy.  Stafford v.
State, 813 S.W.2d 503, 508‑09 (Tex. Crim. App. 1991).  A defendant is
not entitled to perfect or error‑free counsel.  Isolated instances of
errors of omission or commission do not render counsel=s performance ineffective; ineffective
assistance of counsel cannot be established by isolating one portion of trial
counsel=s performance
for examination.  McFarland v. State, 845 S.W.2d 824 (Tex. Crim. App.
1992).  Furthermore, the failure to object to admissible evidence does not
constitute ineffective assistance.  Id. at 846.  

First,
counsel=s failure to
object to the application of the culpable mental states does not constitute
deficient performance.  As we discussed in the second issue, the jury was
instructed properly concerning the applicable mental states.  

Next,
counsel did not perform deficiently by failing to object or request a charge
with respect to the defenses of emergency medical care and necessity. 
Emergency medical care, as a defense to injuring a child, is provided for in Tex. Penal Code Ann. ' 22.04(k) (Vernon Supp.
2008).  Section  22.04(k) provides in relevant part: AIt is a defense to
prosecution under this section that the act or omission consisted of: . . . (2)
emergency medical care administered in good faith and with reasonable care by a
person not licensed in the healing arts.@ 
Counsel did not perform deficiently by failing to request such an instruction
because, although the victim=s
infection may have been serious as appellant testified, there was no evidence
showing that the wound needed emergency medical care.  Furthermore, appellant
testified that she was a licensed practical nurse.  The defense applies only to
those Anot@ licensed in the healing
arts.  Thus, the defense was not available to appellant.  See Shaw v. State,
181 S.W.3d 450, 454-55 (Tex. App.CWaco
2005), aff=d,
243 S.W.3d 647 (Tex. Crim. App. 2007).  

The
defense of necessity is found in Tex.
Penal Code Ann. '
9.22 (Vernon 2003), which provides: 

Conduct
is justified if:

 

(1)
the actor reasonably believes the conduct is immediately necessary to avoid
imminent harm;

 

(2)
the desirability and urgency of avoiding the harm clearly outweigh, according
to ordinary standards of reasonableness, the harm sought to be prevented by the
law proscribing the conduct; and

 

(3)
a legislative purpose to exclude the justification claimed for the conduct does
not otherwise plainly appear. 

 

We cannot hold
that counsel was deficient in failing to request an instruction on the defense
of necessity because there was no evidence indicating that the conduct was
immediately necessary to avoid imminent harm.  








Appellant
next argues that her counsel was ineffective for allowing her to testify.  We
cannot agree.  Although appellant states in her brief that, prior to her
testimony, the only evidence connecting her to the crime was the testimony of
the accomplice, Gideon.  The record shows, however, that appellant=s written statement was
admitted and read to the jury during the State=s
case-in-chief.  That statement tended to connect appellant to the crime. 
Moreover, the question of whether or not to testify on one=s own behalf is ultimately
to be decided by the client. Valdes‑Fuerte v. State, 892
S.W.2d 103, 111 (Tex. App.CSan
Antonio 1994, no pet.).  Appellant has not shown that counsel=s action was not sound
trial strategy.  

Appellant
next complains of counsel=s
failure to object to the omission of an accomplice witness instruction.  As
conceded by the State, the trial court should have given such an instruction. 
Although counsel=s
failure to object to such an omission may have been a Aglaring error,@
we cannot hold that the error prejudiced appellant=s defense because there was ample
corroboration by other evidence.  See Patterson v. State, 204 S.W.3d
852, 861 (Tex. App.CCorpus
Christi 2006, pet. ref=d)
(citing Robinson v. State, 665 S.W.2d 826, 831 (Tex. App.CAustin 1984, pet. ref=d)).  Appellant has not
shown that there is a reasonable probability that the result would have been
different but for counsel=s
failure to object to the omission of an accomplice witness instruction.  

In
her final argument, appellant asserts that counsel was ineffective for failing
to object to the improper comments made by the prosecutor during closing
argument.  As we noted earlier, however, the comments at issue were not
improper; each constituted a summation of the evidence, a reasonable deduction
from the evidence, or an answer to the arguments of opposing counsel.  See
Cantu, 842 S.W.2d at 690.  Thus, counsel=s
failure to object cannot be considered deficient.  

Appellant
has not met the standards set out in Strickland.  Consequently, we
overrule her fifth issue and all its subparts.  

                                                                     Conclusion

The
judgment of the trial court is affirmed.  

 

TERRY McCALL

JUSTICE

January 30, 2009

Publish.  See
Tex. R. App. P.  47.2(b). 

Panel consists of: Wright, C.J.,

McCall, J., and Strange, J.