

# NUMBER 13-11-00767-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **JOSE ANTONIO TREVIÑO,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

## On appeal from the 404th District Court of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Perkes
### Memorandum Opinion by Justice Garza

Appellant, Jose Antonio Treviño, was convicted of capital murder and sentenced to life imprisonment. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2011). On appeal, Treviño argues that: (1) an accomplice's testimony was not sufficiently corroborated; (2) a jailhouse informant's testimony was not sufficiently corroborated; (3) the evidence was insufficient to support his conviction; (4) the trial court erred in admitting allegedly hearsay testimony; and (5) the prosecutor improperly commented on

his failure to testify.  We affirm.

## I. BACKGROUND

On February 9, 2009, the dead body of Rose Marie Gonzalez was found stuffed inside the refrigerator of her apartment in Harlingen, Texas.  Gonzalez's face was covered with a plastic bag and her hands were tied behind her back with electrical cord.  An autopsy revealed that Gonzalez died of asphyxia associated with blunt force trauma to the head and chest area.  The autopsy also showed evidence of sexual assault.

Officer Jaime Palafox of the Harlingen Police Department recalled that, two nights before the body was found, he encountered four young men less than half a mile away from the apartment complex.  One of the men had scratch marks on his face, another had blood on his shoes, and another had plastic bags wrapped around his ankles.  The men informed the officer that they had just been in an altercation with a rival gang in a nearby park.  The four men were subsequently identified as Marco Barrientos, Israel Martinez, Rudy Zuniga, and Treviño.

Zuniga, who was 14 years old at the time of the events leading to Gonzalez's death, testified at Treviño's trial as an accomplice witness.  He stated that, on February 7, 2009, the four men were at Barrientos's house drinking beer and smoking marihuana.  At some point during the day, Barrientos asked if the men wanted to go to a girl's house.  The men said yes, and Barrientos's mother drove them to Gonzalez's apartment.  Gonzalez was alone when they arrived.  After about an hour, Barrientos and Treviño left to purchase cocaine.  When they returned, they went into Gonzalez's bedroom, and they asked Zuniga to join them.  According to Zuniga, Barrientos then explained that he and Treviño wanted to rape Gonzalez.  Zuniga testified that, in response to Barrientos's comments, Treviño said "he was down with it"—that is, he was

2

going to "help out [Barrientos] to—to rape [Gonzalez]." Zuniga testified: "They told me that—they told me that we better do it, if not, that he was going to fuck us up."

Treviño grabbed Gonzalez and carried her into the bedroom. Zuniga went back to the living room; from there, he could hear Gonzalez scream "let me go" from the bedroom. Treviño then asked Zuniga to come into the bathroom which was adjacent to the bedroom. When Zuniga did so, he saw Gonzalez lying naked on the floor, and he saw Barrientos trying to grab her legs. Zuniga took a curtain out of a bag in the bathroom and handed it to Barrientos so he could use it to tie Gonzalez's legs together. Treviño grabbed Gonzalez's wrists so she could not move. Gonzalez continued to struggle, so Barrientos began to beat her on the back of her head and face with his fists. Barrientos also instructed Martinez to participate in the beating.

According to Zuniga, Barrientos then raped Gonzalez, first using his finger and then using a toothbrush that he found on the sink. Zuniga did the same at Barrientos's direction. Zuniga testified that Treviño proceeded to rape Gonzalez using an aerosol spray can, also at Barrientos's direction, and that Martinez did the same. Barrientos then placed a plastic bag around Gonzalez's face and he began to choke her, first with his hands and then with a towel. Barrientos also told Zuniga to pour orange juice over Gonzalez's then-motionless body. The men dragged the body to the kitchen, at which point Barrientos obtained a power cord from a radio and used it to bind Gonzalez's hands. According to Zuniga, Barrientos and Martinez then stuffed Gonzalez's body in the refrigerator.

The men then left the scene and soon encountered Officer Palafox. Officer Palafox temporarily detained Barrientos and Treviño in the back of his patrol unit. While in the back of the patrol unit, the two men had a conversation which was recorded,

3

transcribed, translated, and entered into evidence. In the conversation, Barrientos referenced his affiliation with a local gang known for violence, and Treviño then asked Barrientos: "What do I have to do to get in?" Barrientos responded: "Nothing." Treviño then asked: "I already did it or what?"

Barrientos was arrested on the night of the murder for public intoxication. After officers learned of the murder two days later, Treviño and the other men were identified as suspects and were arrested. After being arrested, Treviño agreed to participate in an interview with detectives. A recording of the interview was introduced into evidence. During the interview, Treviño initially denied having contact with Barrientos or Gonzalez on February 7, 2009. He stated, instead, that he was at a nearby park when the murder was said to have been committed. Later in the interview, however, Treviño admitted that Barrientos's mother drove him, along with the other men, to Gonzalez's apartment on the night of the murder. He admitted being aware of Barrientos's plan to rape Gonzalez but denied helping Barrientos carry out the murder. As a result of these statements, Treviño was arrested and charged as a party to capital murder.

After the arrest, police collected, among other things, the sneakers Treviño was wearing. Investigators later discovered that the sneaker matched a bloody footprint found in the bedroom of Gonzalez's apartment. Further, blood found on one of Treviño's shoes matched Gonzalez's DNA. However, Treviño's DNA was not located at the scene.

Treviño telephoned his mother shortly after his arrest. During their conversation, Treviño initially denied having gone to Gonzalez's apartment. Later, however, he admitted that he was with Barrientos when Gonzalez was murdered. Treviño also informed his mother that he had washed the clothes he was wearing that night.

4

Treviño also spoke about the incident to a fellow inmate, Juan Ochoa. Ochoa testified that Treviño approached him seeking advice on how to get his case dismissed. According to Ochoa, Treviño explained that he received a visit from Barrientos two days after the murder, and that Barrientos told Treviño not to worry about getting caught because they would have been caught already. Treviño also stated that he knew Barrientos planned to rape Gonzalez. According to Ochoa, Treviño stated that he instructed Barrientos to rape Gonzalez with the toothbrush, and that he retrieved the plastic bags placed over Gonzalez's head.

The jury found Treviño guilty of capital murder and the trial court sentenced him to life imprisonment without possibility of parole. This appeal followed.

## II. DISCUSSION

### A. Corroboration of Accomplice and Jailhouse Informant Testimony

By his first issue, Treviño contends that there was insufficient evidence, other than the testimony of his accomplice Zuniga, to connect him to the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). He argues by his second issue that there was insufficient evidence other than the testimony of Ochoa, a jailhouse informant, to connect him to the offense. *See id.* art. 38.075(a) (West Supp. 2011).

#### 1. Applicable Law and Standard of Review

Article 38.14 of the code of criminal procedure provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." *Id.* art. 38.14; *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011) (quoting *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998)) ("The Legislature has determined

5

that the factfinder should exercise caution when considering the testimony of an accomplice" because "'accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person.'").[1] Article 38.075 states:

> A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest during a time when the person was imprisoned or confined in the same correctional facility as the defendant unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

*Id.* art. 38.075(a).[2]

The evidence used for corroboration does not need to be in itself sufficient to establish guilt beyond a reasonable doubt, nor must it directly link the accused to the commission of the offense. *Patterson v. State*, 204 S.W.3d 852, 859 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citing *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996); *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994); *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993); *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992)). Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration. *McAfee v. State*, 204 S.W.3d 868, 871 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citing *Dowthitt*, 931 S.W.2d at 249; *Munoz*, 853 S.W.2d at 559). The absence of "smoking gun" evidence does not invalidate evidence that does connect the defendant to the offense. *Id.* (citing *Treviño v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999)).

---

[1] An accomplice is a person who participates with a defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Patterson v. State*, 204 S.W.3d 852, 858 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citing *Kutzner v. State*, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999)). It is undisputed that Zuniga was an accomplice of Treviño as a matter of law. *See id.* (citing *Hendricks v. State*, 508 S.W.2d 633, 634 (Tex. Crim. App. 1974)).

[2] It is undisputed that Ochoa is "a person to whom [Treviño] made a statement against [Treviño]'s interest during a time when the person was imprisoned or confined in the same correctional facility as [Treviño]." *See* TEX. CODE CRIM. PROC. ANN. art. 38.075(a) (West Supp. 2011).

The law applying to cases involving corroboration of accomplice witness testimony also applies to cases involving corroboration of jailhouse informants. *Schnidt v. State*, 357 S.W.3d 845, 851 (Tex. App.—Eastland 2012, pet. ref'd); *Ruiz v. State*, 358 S.W.3d 676, 680 (Tex. App.—Corpus Christi 2011, no pet.).

### 2. Simultaneous Application of Statutes

Treviño asks that we consider his first two issues together because "they involve the same principal [sic] of law." In other words, he asks us to apply both statutes simultaneously and consider for corroboration purposes only the evidence that was not *either* accomplice testimony *or* jailhouse informant testimony. The State, in its appellate brief, assumes for purposes of its argument that the approach suggested by Treviño is proper "because the independent corroborative evidence sufficiently tends to connect [Treviño]" to the offense.

In *Patterson v. State*, 204 S.W.3d 852, 858–59 (Tex. App.—Corpus Christi 2006, pet. ref'd) (en banc), the appellant similarly argued that two corroboration statutes should be applied simultaneously. In that case, the appellant argued that only evidence that was neither covert agent testimony or accomplice testimony could be considered in the corroboration analysis. *See id.*; see also TEX. CODE CRIM. PROC. ANN. arts. 38.14 (accomplice testimony statute), 38.141(a) (West 2005) ("A defendant may not be convicted of [an offense under the Texas Controlled Substances Act] on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed."). The State argued, on the other hand, that the statutes should be applied independently. *Patterson*, 204 S.W.3d at 859. We

7

concluded that appellant's interpretation "comports closest to existing legal precedent." *Id.* We reasoned that "[o]nly appellant's position recognizes the inherent suspicion and disfavor owed as a matter of law to testimony from witnesses such as accomplices and informants, who are of dubious credibility, especially where such testimony is offered as the sole proof of guilt against the defendant." *Id.* (citing *Blake*, 971 S.W.2d at 454). We noted that:

> Under the State's interpretation, an accomplice would be able to corroborate the testimony of an informant at trial. The same informant could then testify at the same trial to corroborate the same accomplice. In this circular fashion, a defendant could be convicted on nothing more than the testimony of an accomplice and an informant. This result would be absurd in light of the legislature's clear action to disfavor such evidence and to hold it insufficient for conviction as a matter of law.

*Id.*

The same logic applies here. The jailhouse-informant statute, like the covert-agent statute, was enacted because testimony of that sort is inherently of dubious credibility. It would contravene the legislature's intent to permit corroboration of such testimony with other evidence that is also deemed inherently untrustworthy. *See Blake*, 971 S.W.2d at 454 ("The [accomplice-witness] rule reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person."). Accordingly, consistent with *Patterson*, we will eliminate all of the accomplice testimony and jailhouse-informant testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect Treviño with the commission of the crime. *See id.*; *see also Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007) (applying article 38.14); *Ruiz*, 358 S.W.3d at 681.

### 3.     Analysis

Disregarding the testimony of accomplice Zuniga and jailhouse informant Ochoa, we find corroborative evidence sufficient to connect Treviño to the crime. First, forensic investigation revealed that a bloody footprint found in Gonzalez's bedroom matched Treviño's shoe and blood found on one of Treviño's shoes matched Gonzalez's DNA profile. This evidence corroborated Zuniga's testimony regarding Treviño's participation in the rape and murder at Gonzalez's apartment. Second, the autopsy of Gonzalez's body showed internal injuries consistent with the method of sexual assault described by Zuniga. Third, in an interview with police, Treviño initially denied having contact with Barrientos or Gonzalez on the night in question; instead, he claimed to have been at a nearby park. However, in a phone conversation with his mother, Treviño conceded that he was with Barrientos on the night of the murder and that he had washed the clothes he was wearing that night. Finally, while detained in the back of a police car, Treviño asked Barrientos, a known gang member: "What do I have to do to get in? . . . I already did it or what?"

While the accused's mere presence at the scene of the crime is insufficient, by itself, to corroborate accomplice witness or jailhouse informant testimony, evidence of such presence coupled with other suspicious circumstances may tend to connect the accused to the offense. *See Dowthitt*, 931 S.W.2d at 249. Treviño's initial denial and his statements to Barrientos constitute suspicious circumstances that—combined with his statement to his mother regarding his presence at the crime scene—sufficiently corroborate the accomplice and jailhouse informant testimony. *See Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984) (noting that defendant's initial denial of his presence at the crime scene was a "suspicious circumstance" that could be considered

9

in evaluation of non-accomplice testimony); *Paulus v. State*, 633 S.W.2d 827, 846 (Tex. Crim. App. 1981) (noting that evidence of motive or opportunity, though alone insufficient to corroborate accomplice testimony, "may be considered in connection with other evidence tending to connect the accused with the crime").

Treviño's first and second issues are overruled.

## B.    Evidentiary Sufficiency

By his third issue, Treviño challenges the sufficiency of the evidence to support his conviction.

### 1.    Standard of Review and Applicable Law

In reviewing evidence for legal sufficiency, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).  When faced with conflicting evidence, we presume that the trier of fact resolved any such conflict in favor of the prosecution, and we defer to that resolution.  *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge.  *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of

10

proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Here, a hypothetically correct jury charge would state that Treviño is guilty of the charged offense of capital murder if he, as a principal or a party, intentionally caused Gonzalez's death in the course of committing or attempting to commit aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011), § 19.03(b)(2). A person commits aggravated sexual assault if, among other things, he intentionally or knowingly causes the penetration of the sexual organ of another person by any means without that person's consent, and causes serious bodily injury to another. *See id.* § 22.01(a)(1)(A) (West 2011), § 22.021(a)(1) (West Supp. 2011)

Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2011). When we review the sufficiency of the evidence supporting a defendant's participation as a party to the crime, "we may consider 'events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000) (quoting *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)).

### 2. Analysis

In Treviño's discussion of his third issue in his appellate brief, he excludes the testimony of accomplice Zuniga and jailhouse informant Ochoa. However, a challenge of insufficient evidence to support a verdict is not the same as a challenge of insufficient

11

corroboration of accomplice or jailhouse informant testimony, but is instead governed by a different test. *See Yost v. State*, 222 S.W.3d 865, 871–72 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999) (en banc); *Torres v. State*, 137 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2004, no pet.)). In a legal sufficiency review, we consider all the evidence, even uncorroborated accomplice and jailhouse informant testimony. *See id.* at 875.

Considering all the evidence, we find that the jury's verdict was amply supported. Zuniga testified that, when Barrientos indicated his intent to rape Gonzalez, Treviño replied that he was "down with it" and would "help out" Barrientos to commit the rape. Zuniga testified that Treviño grabbed Gonzalez, carried her into the bedroom of the apartment, grabbed Gonzalez's wrists to prevent her from moving, raped her with an aerosol spray can, and helped to stuff her motionless body into a refrigerator. Although the evidence established that Barrientos was the lead assailant, it also abundantly supported a finding that Treviño was guilty as a principal or as a party to the offense. The evidence was legally sufficient to establish the elements of capital murder as set forth in the indictment. *See* TEX. PENAL CODE ANN. §§ 7.02(a)(2), 19.02(b)(1) 19.03(b)(2), 22.01(a)(1)(A), 22.02(a)(1). Treviño's third issue is overruled.

## C. Hearsay and Right to Confrontation

By his fourth and fifth issues, Treviño challenges the trial court's admission of testimony which he claims was inadmissible hearsay, and which he claims violated his constitutional right to confront witnesses.

As set forth above, Zuniga testified on direct examination about the events leading to Gonzalez's rape and death. At one point, when Zuniga began to relate what Barrientos told him immediately prior to the assault, Treviño's trial counsel objected "as

12

to anything [Barrientos] may have told [Zuniga] as being hearsay." The trial court initially sustained the objection. The prosecutor then explained that the testimony would reflect a statement against Barrientos's penal interest, and would therefore constitute an exception to hearsay. *See* TEX. R. EVID. 803(24). The court then overruled the objection. Defense counsel then further objected on the basis that admission of the testimony violated Treviño's right to confront witnesses under the United States and Texas Constitutions. The trial court stated:

> All right. I'm going to overrule your objection. However, I will instruct the jury that the statement that I am admitting it as to Marco Barrientos, who is not here, and it's not to be used or held against Mr. Treviño. It's simply to give the jury a sequence of how events occurred. Overruled.

Zuniga then proceeded to testify that Barrientos told him that Barrientos and Treviño wanted to rape Gonzalez. Zuniga also testified that Treviño said he was going to "help out" Barrientos, and that Barrientos and others "told me that we better do it, if not, that he was going to fuck us up."

## 1. Confrontation Clause

We first address Treviño's fourth issue, by which he complains that the trial court violated his right to confront witnesses by admitting the challenged testimony.

The United States and Texas constitutions provide that an accused has the right "to be confronted with the witnesses against him" in a criminal prosecution. U.S. CONST. amends. VI, XIV; *see* TEX. CONST. art. I, § 10. Consistent with this guarantee, a testimonial hearsay statement may be admitted in evidence against a defendant "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). The Confrontation Clause applies only to "witnesses" against the accused—that is, those who "bear testimony."

13

*Crawford*, 541 U.S. at 51. "Testimony" is typically "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.*

The primary focus in determining whether a hearsay statement is "testimonial" is upon the objective purpose of the interview or interrogation, not upon the declarant's expectations. *De La Paz*, 273 S.W.3d at 680 (citing *Davis v. Washington*, 547 U.S. 813, 822–23 (2006)); *see King v. State*, 189 S.W.3d 347, 358–59 (Tex. App.—Fort Worth 2006, no pet.) ("The legal ruling of whether a statement is testimonial under *Crawford* is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant."). Whether a statement is testimonial is a question of law that we review de novo. *De La Paz*, 273 S.W.3d at 680 (citing *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006)).

As Treviño concedes, a co-conspirator's statements made in the furtherance of the conspiracy are generally considered non-testimonial. *See Crawford*, 541 U.S. at 56 (noting that most hearsay exceptions "covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy"); *King*, 189 S.W.3d at 359; *Wiggins v. State*, 152 S.W.3d 656, 659 (Tex. App.—Texarkana 2004, pet. ref'd). Moreover, casual remarks made spontaneously to acquaintances are not considered testimonial in nature. *See Woods v. State*, 152 S.W.3d 105, 114 (Tex. Crim. App. 2004); *Wall*, 184 S.W.3d at 736 n.11. Here, the challenged statements consist entirely of Barrientos's casual declarations to his acquaintances regarding his intention to commit rape, and his exhortations to his accomplices to do the same. There is nothing in the record indicating that an objective witness would have concluded that Barrientos's statements would be available for use at a later trial. *See Crawford*, 541 U.S. at 52 (noting that "testimonial" statements are,

14

by one definition, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial"); *Wall*, 184 S.W.3d at 736 n.11 (noting that, "where an objective witness reasonably anticipates that a given statement will be used at a later trial, that statement is likely testimony in the sense that it is offered to establish or prove a fact").

Accordingly, we find that the statements made by Barrientos, as testified to by Zuniga, are not "testimonial" in nature. The admission of those statements into evidence therefore did not offend Treviño's right to confront witnesses. We overrule Treviño's fourth issue.

### 2. Hearsay

We next address Treviño's fifth issue, by which he contends that the trial court erred by admitting the challenged testimony because it was inadmissible hearsay.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally inadmissible as evidence, although some exceptions apply. TEX. R. EVID. 802, 803, 804. Moreover, a statement is not considered hearsay if, among other things, it is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." TEX. R. EVID. 801(e)(2)(E). It is undisputed that the declarant, Barrientos, was a co-conspirator of Treviño and that the challenged statement was made during the course and in furtherance of their conspiring to assault Gonzalez. Accordingly, the statements are not hearsay.[3] *See id.* Treviño's fifth issue is overruled.

---

[3] The State further argues that, even if the statements were hearsay, they are nevertheless admissible because they constitute statements against Barrientos's penal interest. *See* TEX. R. EVID. 803(24). We need not address this argument because of our conclusion that the statements were not

15

**D.    Comment on Failure to Testify**

By his sixth issue, Treviño contends that his right against self-incrimination was violated because the prosecutor, in his closing argument, referred to the fact that Treviño did not testify.  In particular, the prosecutor stated, in relevant part:

> Ladies and gentlemen, do you remember at the beginning—right at the beginning of this trial [defense counsel] stood up and told you that Rudy Zuniga was going to come here and he was going to minimize his role, right?  He was going to try to downplay what he did and pass the blame off on everybody else.  Rudy Zuniga came, and . . . [h]e testified as an accomplice.  He was an accomplice to this murder.  He was an accomplice to the sexual assault and he pleaded guilty.  He got 40 years. He took part, and he told you the part that he pled to.  He told you what he did.  He told you about the toothbrush.  He told you about the curtains.  He told you about holding her shaking hands.  He told you about all that. What did the defendant admit to?  Nothing.  Who's downplaying their role, ladies and gentlemen, Mr. Zuniga or Mr. Treviño?

At that point, defense counsel objected as follows:

> Your Honor, I'm going to object, Your Honor, because I think that the State is bringing evidence that's first inadmissible, Judge, secondly protected by constitutional guarantees, Your Honor.  The defendant is not required to bring any evidence or make any statements concerning this issue.  I would ask the Court to instruct the jury to disregard that last statement as being a violation of his constitutional rights, and we further move for a mistrial.

The trial court then asked the prosecutor for a response, and the following exchange occurred:

[Prosecutor]:          Your Honor, I'll rephrase my argument.  In his statement—

[Defense counsel]:   I'd ask for a ruling from this Court.  I requested a mistrial, Your Honor, based on the conduct of the State.  I ask the Court to rule on that matter.

THE COURT:           Overruled.

[Prosecutor]:          If the Court wants to instruct the jury to disregard, that's fine.

hearsay.  *See* TEX. R. APP. P. 47.1.

16

[Defense counsel]:  Once said, it can't be unsaid, Your Honor, that's the problem.  The State knows—the State is well aware that they cannot comment on that type of evidence and that that creates a problem, Your Honor.

THE COURT:  Motion for mistrial is denied.  Ladies and gentlemen, you understand in the charge I've instructed you that the defense has no burden of proof.  All of the burden of proof lies with the State.  So you will disregard the last ending statement of the prosecutor.

### 1.  Applicable Law and Standard of Review

Proper jury argument falls into four well-defined categories of discussion:  (1) a summation of the evidence; (2) reasonable deductions from the evidence admitted for consideration by the jury; (3) a rejoinder to argument by opposing counsel; and (4) a plea for law enforcement.  *Cantu v. State*, 842 S.W.2d 667, 690 (Tex. Crim. App. 1992).  The fact that a defendant did not testify does not fall into any of these categories and may not be the subject of comment by the prosecution.  *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).  Such comments run afoul of article 38.08 of the Texas Code of Criminal Procedure and violate the privilege against self-incrimination contained in the United States and Texas Constitutions.  *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08 (West 2005) ("The failure of any defendant to . . . testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.").

Argument will constitute a comment upon the defendant's failure to testify only if "the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify."  *Cruz*, 225 S.W.3d at 548 (citing *Bustamante*, 48 S.W.3d at 765).  "[T]he

17

implication that the State referred to the defendant's failure to testify must be a clear and necessary one." *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011). "If the language might reasonably be construed as merely an implied or indirect allusion, there is no violation." *Id.*

### 2. Analysis

The State contends that Treviño failed to preserve this issue for appeal because his counsel's objection to the trial court was not specific enough to inform the trial court about the basis of his complaint. *See* TEX. R. APP. P. 33.1(a)(1)(A) (stating that, to preserve a complaint for appellate review, the record must show that the complaint was made to the trial court with "sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"); *see also, e.g., Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009) ("The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint."). The State contends that "the trial court reasonably understood [Treviño]'s objection as a comment on [the] State's attempt to shift the burden of proof and not as an objection to a comment on his failure to testify—the ground he now asserts on appeal."

Assuming, without deciding, that the issue was preserved for review, we nevertheless conclude that it is not meritorious, because we do not believe that the jury must have "necessarily" taken the prosecutor's remark as a comment on Treviño's failure to testify. *See Cruz*, 225 S.W.3d at 548. Instead, the jury could have reasonably construed the remark as referring to Treviño's failure to admit to his full participation in the assault in either his recorded telephone conversation with his mother or in his

18

statement to police. *See Randolph*, 353 S.W.3d at 891. This interpretation is consistent with the rephrased argument that the prosecutor gave after the trial court instructed the jury to disregard: "Ladies and gentlemen, you've heard the call that Mr. Treviño made to his mother. You heard that call. What did he admit to? Nothing. You heard the statement that he gave to police. In his statement, what does he admit to? Nothing. We know that's not true."[4]

Because the language used by the prosecutor was not "manifestly intended" as a comment on Treviño's failure to testify, nor was it "of such a character that the jury would necessarily and naturally take it" as such, Treviño's constitutional right against self-incrimination was not violated. *See Cruz*, 225 S.W.3d at 548. His sixth issue is overruled.

## III. CONCLUSION

Having overruled all of Treviño's issues on appeal, we affirm the trial court's judgment.

DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
2nd day of May, 2013.

---

[4] Defense counsel did not renew his objection after this rephrased argument.

19